**CAMERON MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Ruthie A. PROCTOR and Edward P. Cleary, Defendant Ad Litem for Charles James Proctor, Deceased, Appellants.**

**No. WD 39231.**

Missouri Court of Appeals, Western District.

Jan. 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1988.

Application for Transfer Sustained April 19, 1987.

Case Retransferred Oct. 18, 1988.

Court of Appeals Opinion Readopted Oct. 28, 1988.

Bradley, Langdon, Bradley & Emison, Lexington, for appellants.

Wesner, Kempton and Russell, Sedalia, for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

PRITCHARD, Presiding Judge.

Respondent was successful in the trial court in procuring a declaration that it was not required to defend or pay any judgment in an action for personal injuries brought by Ruthie A. Proctor against the Defendant Ad Litem for Charles James (C.J.) Proctor, deceased, who was Ruthie's estranged husband. The basis for the decision was that Ruthie was a named insured under respondent's automobile policy and was thus excluded from coverage.

The facts, mostly having been stipulated, are these: Ruthie and C.J. were married in September, 1965, but had separated and were living in separate households from and after March 2, 1985. At the time of separation, they owned a 1984 Blazer, titled in both names, and a 1980 Ford Pinto. During the marriage they had one policy of insurance, No. A 181517, covering both vehicles with respondent, issued in both their names.

On March 6, 1985, Ruthie applied for a policy covering only the Pinto in her individual name, and policy No. A 232336 was issued to her individually on the Pinto on March 7, 1985. Respondent's agent informed it on the application, "Ruthie has a Div. from C.J. Proctor and she gets this car and she works at the Blue Lantern Restaurant in Waverly 3 miles from her home. They did have policy A 181517."

C.J. renewed policy No. A 181517, which covered only the 1984 Blazer about March 7, 1985, but it lapsed on September 7, 1985. C.J. reinstated the policy on September 24, 1985. Ruthie did not authorize either the renewal or reinstatement by C.J. of the policy on the Blazer, which still listed her as a named insured, although the Pinto had been removed from it. Nor was Ruthie contacted with respect to the renewal or reinstatement. In April, 1985, she did ask C.J. to take her name off the title and insurance on the Blazer, but he told her he could not do that because GMAC, with whom it was financed, would not let her off the title. She had signed the note to GMAC along with C.J. and her name was on the title and insurance policy. Ruthie received no notices or billings for policy No. A 181517 at her Waverly address. Neither Ruthie nor C.J. specifically requested respondent to remove her name from that policy.

On November 22, 1985, the Pinto was damaged in a wreck, and payment therefor was made to Ruthie under her separate policy, on which she later added a 1978 Chrysler LeBaron. The title to the Pinto was transferred by signatures of Ruthie and C.J. to respondent.

On March 10, 1986, Ruthie was injured while riding as a passenger in the Blazer being operated by C.J. when it left the roadway. C.J. died as a result of injuries he received in that accident.

The 1984 Blazer was totalled in the accident and respondent paid $9,531 for the loss under the collision coverage, $6,154.81 to Ruthie and the balance to GMAC. She then signed the Blazer title over to respondent on April 2, 1986.

Respondent, in its coverage clause, "agrees with the insured ... To pay on behalf of the insured all sums which the

insured shall become legally obligated to pay as damages because of bodily injury ... sustained by any person."

The exclusion clause is: This policy does not apply: (g)(2) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; [Exclusion—(g)(2) ]." The evidence is not disputed that Ruthie, at the time of her injuries, was not a resident member of C.J.'s household. The resolution of the issue rests upon whether the fact that at the time of her injuries she was still a named insured under the liability portion of the policy precludes respondent's liability under its policy.

Although respondent had notice from the application through its agent that Ruthie no longer resided in C.J.'s household, and that she desired a separate policy of insurance on the Pinto, it was never given notice of any kind that Ruthie desired to have her name removed from the remaining policy No. A 181517 on the Blazer. The record shows that Ruthie made application to respondent for liability insurance for herself and C.J. jointly in 1981 and 1982, and C.J. made such an application in 1984, thus each manifested an agency to respondent in procuring joint insurance for the other as a continuing relationship, or a course of dealings through those years. In Mechem, 9 Treatise on the Law of Agency, § 628, it is said that as to third persons (such as respondent here) a general or apparently continuing authority requires that reasonable and timely notice be given to the third party of the termination of the agency relationship. At § 677 of that treatise, it is said that the notice should be unequivocal and not leave the parties in doubt, and further that the burden is on the party denying agency to establish notice.

■ Here, although the facts show that Ruthie requested C.J. to remove her name from the Blazer title and policy, when he told her that he could not do so because of the GMAC loan, she did nothing further by way of affirmative steps with either GMAC or respondent to effect that removal, but knowingly permitted the policy and title in their joint names to continue, and in effect,

permitted C.J. to reinstate the policy after its lapse. At § 274 of Mechem, supra, it is provided that where one stands by and permits another to make a contract for him as his agent without disclosing to the third party the lack of authority, he will be estopped from denying the authority. That is precisely Ruthie's situation here. Ruthie did none of the acts for cancellation of the policy by an insured as provided therein by surrendering the policy to the company or any authorized agent or by delivery or mailing a written notice to it. All Ruthie did was to apply for new insurance on the Pinto, hence the agent's notation on the policy application, "They did have policy A 181517 [on the Pinto]."

In *Dickey Co., Inc. v. Kanan*, 537 S.W.2d 430, 434[5, 6] (Mo.App.1976), it was said, "The law indulges no presumption that agency exists [citations omitted], and the burden of establishing agency is on the party by whom it is alleged to exist. [Citations omitted.] Merely because of the marital relationship, neither the husband nor the wife is empowered to act as agent for for the other [citations omitted], and absent proof of facts or circumstances showing agency, the power of the husband to act as agent for his wife will not be inferred." See also *Fuller v. Lloyd*, 714 S.W.2d 698, 701[3, 6] (Mo.App.1986), citing the *Dickey* case, supra. The quoted rule in those cases has no application here because of the prior continuous acting of C.J. and Ruthie for the other shows their agency for the other, no termination thereof being brought home to respondent. Nor are there any circumstances and a course of dealing which are incompatible with a want of knowledge on respondent's part of any such revocation which would bring into play the rule in 3 Am.Jur.2d Agency, § 53, (1986), and the there footnoted quote of Restatement (Second) of Agency § 135 (1957).

It was entirely competent for respondent to insert an exclusion of liability to a named insured for his or her personal bodily injuries. Ruthie must be held to be subject to that exclusion. See *Cameron Mut. Ins. Co. v. Hughes*, 690 S.W.2d 424 (Mo.App.1985) and the there cited case of *Tickner v. Union Insurance Company*,

425 S.W.2d 483 (Mo.App.1968). These exclusionary clauses have generally been held to be valid. See Anno. 46 A.L.R.3d 1061, 1064.

In Point II, Ruthie and the ad litem contend that the severability of interest clause in the policy requires the exclusionary clause to be interpreted narrowly; and in Point III they contend that the exclusionary clause is ambiguous in that it is singular in form and must be construed to apply only to the insured claiming coverage (the ad litem for C.J.) rather than to all insureds. Cited is *Shelter Mutual Ins. Co. v. Brooks*, 693 S.W.2d 810 (Mo. banc 1985) under both points. The *Brooks* case had an identical exclusionary clause as here, but the severability of interest clause was different. It read, "The insurance afforded under Coverages A and B *applies separately to each insured against whom claim is made or suit is brought*, but the inclusion herein of more than one insured shall not operate to increase the applicable limit of the company's liability." The severability clause here lacks the italicized words above in the *Brooks* case. It reads, "Coverages A, B, C and H. (a) The limit of each of the coverages afforded regardless of the number of automobiles insured under this policy or under any other policies issued by this company to the named insured or insured's spouse, shall be the limit stated in the declarations for the automobile involved in the occurrence; if the automobile is not one described in the declarations, then the maximum limit of the company's liability shall not exceed the highest limit of liability for any one automobile described in this or such other policy. (b) The term 'the insured' is used severally and not collectively, but the inclusion of more than one insured shall not operate to increase the limits of the company's liability." The Brooks case, page 812, said, "Finally, the exclusion when read in light of the severability of interests clause at most creates an ambiguity. The exclusion can arguably refer to any insured or only the insured claiming coverage. We resolve ambiguities in favor of the insured. [Citation omitted] Thus, the exclusion refers only to the insured claiming coverage." Here, the exclusion clause, standing alone,

is not ambiguous, and the severability of interest clause does not create an ambiguity as it did in the *Brooks* case. Ruthie was a named insured and she must abide with the exclusion clause. Points II and III are overruled.

In *Townsend v. Townsend*, 708 S.W.2d 646 (Mo. banc 1986); and in *S.A.V. v. K.G.V.*, 708 S.W.2d 651 (Mo. banc 1986), the doctrine of interspousal immunity was abolished in this state. In their last point, Ruthie and the ad litem contend that this abolition require that the exclusion within respondent's policy be declared void on public policy considerations. There exists no public policy consideration which would require respondent not to exclude a named insured, such as Ruthie, from coverage for her own bodily injuries. The last point is overruled.

The judgment is affirmed.

All concur.