**Bessie L. FOSTER, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

**No. WD 39235.**

Missouri Court of Appeals,
Western District.

March 22, 1988.

As Modified May 3, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1988.

Application to Transfer Denied
June 14, 1988.

Martin M. Meyers, David T. Holt, Kansas City, for appellant.

Gary M. Cupples, Chris J. Molzen, Kansas City, for respondent.

Before KENNEDY, C.J., and BERREY and COVINGTON, JJ.

KENNEDY, Chief Judge.

Judgment creditor Bessie I. Foster appeals from an adverse judgment upon a bench tried garnishment action against State Farm Mutual Automobile Insurance Company, Sec. 525.200, RSMo 1978. State Farm was the liability insurance carrier upon an automobile belonging to Bessie's husband, George Foster, by which Mrs. Foster was injured. Mrs. Foster's judgment was against her sister, Margarette Weaver, who was operating the automobile at the time it struck Mrs. Foster and caused her injuries.

Judgment affirmed.

Mrs. Foster at the time of the accident (October 22, 1978) lived in Sedalia. A day or two before the accident she had driven to Independence. On the evening of the accident, she and her sister, Margarette Weaver, were driving around the streets of Independence, looking for Mrs. Foster's daughter. Mrs. Foster was driving and Mrs. Weaver was a passenger. They pulled into a service station to get gasoline, stopping the car by a self-service pump. Mrs. Foster got out of the car to put in the gas. She discovered that the nozzle would not reach the gas tank. She told Mrs. Weaver to pull the car up. When Mrs. Weaver undertook to do so, she accidentally got the car in reverse. The car struck Mrs. Foster and the gasoline pump, resulting in Mrs. Foster's injuries.

On December 15, 1980, Mrs. Foster had a default judgment against Mrs. Weaver in the sum of $200,000. It is on this judgment that Mrs. Foster undertakes to garnish the proceeds of a liability policy issued by State Farm to her husband, George Foster.

State Farm denied coverage on several grounds. We need consider only one such ground, which is dispositive of the case.

The insurance policy had been issued to Mrs. Foster's husband, George Foster, who was the owner of the car involved in the collision. The liability policy contained a "household exclusion" which provided that it furnished no coverage for bodily injuries to "any insured or any member of an insured's family residing in the insured's household." An "insured" includes a spouse "while living with you (George Foster, the named insured)". The pertinent inquiries then, which are closely related if not identical, see *Countryside Casualty Co. v. McCormick*, 722 S.W.2d 655, 659 (Mo.App.1987), are whether Mrs. Foster was "living with" George Foster, and whether she "resided in George Foster's household", in either which case she was excluded from coverage by the household exclusion. The trial court found for State

Farm on both these points, and we think the evidence amply supports the trial court judgment.

Mrs. Foster maintains that the trial court was in error in finding that she and Mr. Foster resided in the same household in Sedalia, Missouri. Mrs. Foster claims they resided in different households—she in the Sedalia residence, and Mr. Foster in the household of his sister in Crestwood, Missouri.

Mr. and Mrs. Foster and their two minor children lived together in a residence in St. Louis from June, 1976 (when they were remarried after an earlier divorce) until July, 1978. In July, 1978, they purchased a residence in Sedalia, Missouri, where they had earlier lived. The title to the residence was taken in their joint names, and the homeowners' insurance, purchased by Mrs. Foster, was in both their names. In the same month as the purchase of the house they moved Mrs. Foster's and the children's belongings to the Sedalia residence in a rented truck. The move was accomplished over a three-or-four-day period. Mrs. Foster and the children from then on made the house their daily and only place of abode. Mr. Foster, however, stayed in St. Louis in the home of his sister. He had been employed by the Ritenour School District as a teacher since 1968, and he planned to (and in fact did) continue in that employment till his retirement in 1980.

In July, 1978, Mr. Foster was in Sedalia on at least one or two different occasions. He had spent the weekend before the accident with the family in Sedalia. He had helped to cook, and Mrs. Foster testified they probably slept together. The telephone was listed in Mr. Foster's name. The utilities were in his name. He paid the utility bills. He paid the grocery bills for the family. He listed the Sedalia address as his own in various places, including the title to the car which was involved in this accident, insurance policies and income tax returns. On the Ritenour School District records his address was listed as 8907 Harwich Drive, in Crestwood, Missouri. He received mail at both addresses.

The car which was involved in the accident, a 1970 Buick, had been purchased by Mr. Foster only two weeks before the accident. He had driven it from St. Louis to Sedalia and had turned it over to Mrs. Foster for her unrestricted use. The title to the car was in Mr. Foster's name, and his address was given as the Sedalia address. He purchased the liability insurance policy from a Sedalia agent, giving his address as the Sedalia address.

■ The evidence recounted above clearly supports the trial court's conclusion that Bessie and George lived together in a common household within the meaning of the household exclusion of the policy. That George was physically present in the Sedalia house only a small percentage of the time does not negate his household's situs in Sedalia, nor his and Bessie's membership in the same household. His physical presence in St. Louis was only for convenient access to his employment, which he expected to terminate soon. His living arrangements there, in the residence of his sister, have the badges of temporary sojourn. His relationship to the Sedalia residence, which he jointly owned with his wife and where his wife and children resided, supported by him, to which residence he frequently returned and where he intended to return permanently within a short while, have the marks of permanency.

■ The criteria which the cases apply in these factual situations to determine if parties are "living together" or are "members of the same household" are: whether the separation of the parties is permanent or temporary, and whether the family functions as a family unit under one management. *American Family Mutual Insurance Co. v. Brown*, 657 S.W.2d 273, 275 (Mo.App.1983). By these criteria, the evidence amply justified the trial court's conclusion that Mr. and Mrs. Foster were "living together" and were "members of the same household". That finding brings Mrs. Foster within the household exclusion of the policy and is dispositive of the case.

This decision is supported by *Stone v. Waters*, 483 S.W.2d 639 (Mo.App.1972), wherein spouses temporarily living apart

were held to be "living together" for the purpose of determining that the wife was an injured under the policy. Cases from other jurisdictions agree, *see Lumbermen's Mutual Casualty Co. v. Continental Casualty Co.,* 387 P.2d 104 (Alaska 1963); *National Emblem Insurance Co. v. McClendon,* 481 S.W.2d 186 (Tex.App.1972); *Reserve Insurance Co. v. Apps,* 85 Cal. App.3d 288, 149 Cal.Rptr. 223 (1978).

Judgment affirmed.

All concur.