AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent,

v.

Larry WARD, Karen Ward, and
Kenneth Rauscher, Appellants.

No. 71998.

Supreme Court of Missouri,
En Banc.

May 15, 1990.

James P. Leonard St. Louis, for appellants.

Joseph L. Leritz, Richard C. Homire and Edward Roth, St. Louis, for respondent.

Michael A. Dallmeyer, Jefferson City, for amicus curiae.

HOLSTEIN, Judge.

This is an appeal from a declaratory judgment. The trial court determined that a family exclusion clause in an automobile liability insurance policy relieved the insurer of any obligation to defend or pay a claim by the insured's wife who was injured in a collision in which the insured was the driver. Consequently, the trial court absolved the insurer of any obligation to defend or pay a claim for contribution derivative of the wife's claim brought against the insured by a joint tort-feasor. The appeal was filed initially in the Missouri

Court of Appeals, Eastern District. Following the filing of that court's opinion, the appeal was transferred to this Court. Rule 83.02.[1] The single question presented on appeal is whether the household exclusion clause in a policy of motor vehicle liability insurance issued in Missouri is void because it violates the public policy of this state as expressed in the Safety Responsibility Law.

Larry Ward purchased a policy of liability insurance from American Family Mutual Insurance Company effective for six months beginning December 1, 1984. The policy limits for bodily injury were $50,000 for each person and $100,000 for each occurrence. Within those limits, the policy promises that American Family will pay damages for which Larry is legally liable arising out of the use of an automobile. The pertinent exclusionary clause states:

> **EXCLUSIONS.** This coverage does not apply to:
>
> .    .    .    .    .
>
> 10. Bodily injury to any person injured while operating your insured car or for bodily injury to any person related to and residing in the same household with the operator.

The above provision is herein referred to as the "family exclusion clause." The contract of insurance also provides:

> When we [American Family] certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the required coverage. You [Larry Ward] agree to repay us for any payment we would not have had to make except for this agreement.

The policy concludes by stating:

> Terms of this policy which are in conflict with the statutes of the state in which this policy is issued are changed to conform to those statutes.

On March 16, 1985, while the policy was in force, Larry Ward was driving a vehicle which was involved in an automobile accident. Karen Ward, as a passenger, sustained bodily injuries in the collision. On the date of the collision, Larry and Karen Ward were married and had the same residence. Suit was brought by the Wards against Kenneth Rauscher and Renato Aves, two other drivers involved in the collision. A hit and run driver was also involved in the accident, but he was never identified. American Family was joined as a defendant pursuant to the uninsured motorist provisions of Karen's liability insurance policy to defend the liability of the unidentified driver. Rauscher and Aves filed counterclaims against Larry Ward seeking contribution for any damages they might be required to pay to Karen attributable to Larry's negligence.

Following a jury trial, a verdict was returned assessing fault at 55% to the uninsured motorist, 25% to Kenneth Rauscher, and 20% to Larry Ward. The verdict assessed Karen's damages at $1,500,000. A judgment entered on the verdict was thereafter affirmed on appeal. *See Ward v. American Family Ins. Co.,* 783 S.W.2d 921 (Mo.App.1989).

This action was filed prior to the jury trial, but was tried after that case. In its petition, American Family asserted that the family exclusion clause relieved it of a duty to pay damages to Karen or contribution for Karen's damages attributable to Larry which Rauscher might be required to pay. Judgment was entered relieving American Family of liability. Rauscher and the Wards appeal.

The appellants argue that the adoption of contribution and apportionment among tort-feasors in *Missouri Pac. R.R. Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978), and the abrogation of spousal immunity for negligent torts in *S.A.V. v. K.G.V.,* 708 S.W.2d 651 (Mo. banc 1986), have created new classes of persons to whom one may be legally responsible for damages arising out of the use of automobiles. Appellants point out that § 303.190.2(2) requires that a "motor ve-

---

1. References to rules are to Missouri Rules of Court, 1990. The accident in which Karen Ward was injured occurred in 1985. The Motor Vehicle Safety Responsibility Law was amended effective in 1987. Accordingly, all references to statutes are to those provisions of RSMo 1986 in effect in 1985.

hicle liability policy" must protect the insured "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle." Appellants admit that the Safety Responsibility Law in effect at the time of the collision did not mandate insurance. However, the argument continues, the purpose of the statutes in effect at the time of the accident were to provide a remedial system designed to permit injured members of the public to recover from tort-feasors who caused injury in a vehicle accident. Given that purpose and the new classes of persons now entitled to recover, appellants conclude, the Safety Responsibility Law mandates that the family exclusion clause be declared void as against public policy.

American Family relies primarily on *State Farm Mut. Auto. Ins. Co. v. Ward*, 340 S.W.2d 635 (Mo.1960). There, the insured was operating a motor vehicle when it was involved in a collision. The insured was killed. His wife and daughter were injured. The wife and daughter sued the insured's estate seeking damages. The insurer brought a declaratory judgment action to determine if a clause in the liability insurance policy excluding "any member of the family of the insured residing in the same household as the insured" from coverage was valid as against the public policy expressed in the Safety Responsibility Law, § 303.010, *et seq.* The Court noted that the provisions of § 303.190.2(2) mandate the coverage required in a "motor vehicle liability policy." *Id.* at 637. However, a "motor vehicle liability policy," as used in the Safety Responsibility Law, meant an insurance policy "certified" as proof of financial responsibility under the provisions of § 303.170 or § 303.180. *Id.* at 638. The Court said, " 'We cannot read into the insurance contract, under the guise of public policy, provisions which are not required by law and which the parties thereto clearly and plainly have failed to include.' " *Id.* at 639 (quoting *Barkley v. Int'l Mut. Ins. Co.*, 227 S.C. 38, 86 S.E.2d 602, 605 (1955)). Even though a provision in an insurance policy is restrictive, the Court reasoned, such provision must be given its plain

meaning. The Court held that in the absence of certification of the policy, an unambiguous and unequivocal family exclusion clause is effective and does not violate public policy. *Id.* That holding was reaffirmed in *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980).

In *MFA Mut. Ins. Co. v. Howard Const. Co.*, 608 S.W.2d 535 (Mo.App.1980), decided after *Whitehead & Kales Co.*, the question arose as to what effect a family exclusion provision in an automobile liability insurance policy would have on a claim for contribution. There, the insured was operating a vehicle when it was involved in an accident. The insured was killed, and two of the insured's children were injured in the collision. One of the children brought suit against Howard Construction Company which was engaged in highway repair work near the scene of the accident. The suit claimed Howard had negligently failed to post warning signs of the repair work. Howard filed a third-party claim against the insured's estate seeking contribution for any negligence attributable to the deceased insured. A declaratory judgment action was brought by the insurer to determine the extent of its liability for contribution. The court began by pointing out that because the insured was deceased, the child could maintain an action against the insured's estate. Therefore, Howard was permitted to maintain the derivative third-party action for contribution under *Whitehead & Kales. Id.* at 538. However, "Insurance policy exposure is neither enhanced nor reduced by [the apportionment and contribution] aspect of *Whitehead and Kales." Id.* After reciting the family exclusion clause, the court stated that the clause was plain and unambiguous. Accordingly, the court gave effect to the intent of the parties as expressed in the contract. The court deemed it unnecessary to decide the public policy issue.

In *Cameron Mut. Ins. Co. v. Proctor*, 758 S.W.2d 67 (Mo.App.1988), decided after *S.A.V. v. K.G.V.*, a husband and wife were named insureds in a liability policy issued on a 1984 Blazer. The husband, as driver, and the wife, as passenger, were involved

in a collision on March 10, 1986. The husband was killed and the wife was injured. Again, the insurer sought a declaration that it was not liable under an exclusionary clause in the policy. The exclusion relied on read as follows, "This policy does not apply: (g)(2) to bodily injury to the insured. . . ." *Id.* at 69. The court noted the abrogation of interspousal immunity but concluded that no public policy considerations prohibit an insurance policy provision excluding a named insured from coverage under the policy. *Id.* at 70. The exclusionary clause was upheld.

Very recently, in *Hussman v. Gov't. Employees Ins. Co.*, 768 S.W.2d 585 (Mo.App. 1989), the Eastern District of the Missouri Court of Appeals decided almost the precise question presented here. In that case, the insured was the driver of a vehicle involved in an accident. The insured's wife was a passenger and sustained injuries. The question raised on appeal was whether the family exclusion clause was void after abolition of spousal immunity. Based upon an examination of *Harrison v. MFA Mut. Ins. Co., State Farm Mut. Ins. Co. v. Ward,* and *Cameron Mut. Ins. Co. v. Proctor,* the court concluded that abolition of spousal immunity did not invalidate the family exclusion clause. *Hussman,* 768 S.W.2d at 587.

■ Notwithstanding the above authority, appellants take the position that even though a policy is not "certified," all the statutory provisions contained in § 303.190.2(2) should be mandatory as a matter of public policy. Appellants direct our attention to three cases involving interpretation of omnibus clauses in automobile liability insurance policies: *Weathers v. Royal Indem. Co.,* 577 S.W.2d 623 (Mo. banc 1979); *Winterton v. Van Zandt,* 351 S.W.2d 696 (Mo.1961); and *Allstate Ins. Co. v. Sullivan,* 643 S.W.2d 21 (Mo.App. 1982).

In *Winterton,* the insured had given the driver of the automobile permission to go to a store a few blocks distant from the insured's home. The driver was involved in a collision some sixty miles from the city in which the insured lived. The language of

the omnibus clause of the insured's liability policy provided coverage to an operator having the insured's "permission" to use the vehicle. In addition, the insurance policy provided that it was intended to comply with the Safety Responsibility Laws of this state. The Court also took notice of the public policy expressed by the Safety Responsibility Law; specifically, the provision that a policy certified as proof of financial responsibility must contain provisions insuring any person using an insured motor vehicle with the "express or implied permission" of the insured. § 303.190.2(2). The Court construed the word "permission" in the omnibus clause of the policy to mean "express or implied permission." 351 S.W.2d at 701. In *Winterton* there was no direct conflict between the language of the insurance policy being construed and the conditions required in a "certified" motor vehicle liability insurance policy. The Court merely used the statute describing the essential contents of a certified policy as a guide for construing the language in an uncertified policy.

A similar omnibus clause was brought into question in *Weathers.* Relying on *Winterton,* the Court stated that the manifestation of public policy found in § 303.190.2(2) supports a "liberal interpretation of automobile liability insurance omnibus clauses." 577 S.W.2d at 625. There, a rental car company had purchased a liability insurance policy containing an omnibus clause. The omnibus clause provided coverage to any person while using the automobile, provided the actual use of the automobile was with the permission of the rental car company. A customer rented the car. The customer allowed a friend to drive while the customer was riding as a passenger. A collision occurred. The Court construed the wording of the omnibus clause to be broad enough to provide coverage for the driver, although the customer was not actually operating the vehicle. 577 S.W.2d at 630.

The third case, *Allstate Ins. Co. v. Sullivan,* also involved interpretation of an omnibus clause in a liability policy insuring a rental vehicle. The clause provided liability

coverage for "any other person while using an owned automobile ... with the permission of the [rental company], provided his actual operation ... is within the scope of such permission." 643 S.W.2d at 22. In small print·on the back side of the rental agreement were provisions that the vehicle should not be "used, operated or driven by any person ... while under the influence of intoxicants...." *Id.* The same small print of the rental agreement provided that insurance coverage did not apply if the vehicle was used or operated in violation of the restriction on intoxication. The customer was driving the vehicle while intoxicated and was involved in a collision. The court said,

> In view of the language of *Weathers* and in recognition that both the insurer and insured intend for the policy to meet the requirements of the Safety Responsibility Law, we find no merit to Allstate's contention that the policy is to receive a restrictive interpretation until it is actually certified pursuant to the statute.... Any policy providing less protection is contrary to the public policy of this state.... The policy itself provides that the policy is to conform to the requirements of the Safety Responsibility Law of this state and the public policy of this state mandates the same.

643 S.W.2d at 23.

*Allstate Ins. Co. v. Sullivan* is a departure from *Winterton* and *Weathers* in its declaration that automobile liability insurance providing less coverage than required in a policy certified as proof of financial responsibility is contrary to public policy. *Sullivan* has been criticized for having failed to refer to or cite *State Farm Mut. Auto. Ins. Co. v. Ward;* in addition, it has not been consistently followed in subsequent cases. *Protective Casualty Ins. Co. v. Cook,* 734 S.W.2d 898, 908 (Mo.App. 1987); *Universal Underwriters Ins. Co. v. Weber,* 701 S.W.2d 588, 591 (Mo.App.1985). *Sullivan* is distinguishable from the case now under consideration. First, *Sullivan* involved the construction of an omnibus clause. Second, the *Sullivan* insurance policy purported to "meet the requirements of the Safety Responsibility Law." The provision now under consideration is a family exclusion clause and the policy does not undertake to meet the requirements of the Safety Responsibility Law; the only commitment in this policy is to modify terms "which are in conflict with the statutes." *Sullivan* cannot be considered authoritative beyond the context in which it was decided.

■ The common thread throughout *Winterton, Weathers,* and *Sullivan* is that when construing or interpreting an ambiguous clause in a liability insurance policy, the clause should be interpreted in a manner consistent with the coverage required by § 303.190.2(2), even though the policy has not been certified as proof of financial responsibility. That liberal rule of interpretation fosters liability coverage for operators of motor vehicles. *Universal Underwriters Ins. Co. v. Weber,* 701 S.W.2d at 591. However, rules for construing contracts of insurance are inapplicable when a contract provision is clear and unambiguous.

■ The polestar guiding public policy in this case is the Motor Vehicle Safety Responsibility Law, § 303.010 *et seq.,* as it existed in 1985. A reading of those statutes and many precedents construing those statutes disclose two equally compelling rules of public policy. The first is that ambiguous provisions of insurance policies will be liberally construed to conform to the liability coverage described in § 303.190.2(2). The second rule of public policy, at least in 1985, was that the procurement and the extent of automobile liability insurance coverage was voluntary, not mandatory. *Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d at 143; *State Farm Mut. Auto. Ins. Co. v. Ward,* 340 S.W.2d at 638; *Protective Casualty Ins. Co. v. Cook,* 734 S.W.2d at 908; *Universal Underwriters Ins. Co. v. Weber,* 701 S.W.2d at 591; *Perkins v. Perkins,* 284 S.W.2d 603, 609 (Mo.App.1955). A corollary of the second rule is that the parties to a purely voluntary insurance contract may agree to such terms and provisions as they see fit to adopt, subject only to the requirements that the contract is lawful and reasonable.

*State Farm Mut. Auto. Ins. Co. v. Ward,* 340 S.W.2d at 640. Here there is no claim that under general contract principles, the family exclusion clause is unreasonable. The only claim is that the clause is unlawful because it violates public policy.

There is no evidence that the insurance policy under consideration was certified as proof of financial responsibility. Thus, the family exclusion clause of the policy is not in conflict with any provision of the Safety Responsibility Law. The clause is unequivocal and unambiguous and is not subject to construction or interpretation. Neither the adoption of contribution and apportionment among joint tort-feasors nor the abrogation of interspousal immunity modify public policy as expressed in the 1985 version of the Safety Responsibility Law, by mandating the coverage required in an uncertified automobile liability insurance policy.[2] Because the trial court did not commit the error asserted, the judgment is affirmed.

AFFIRMED.

BLACKMAR, C.J., and RENDLEN, HIGGINS and BILLINGS, JJ., concur.

COVINGTON, J., concurs in separate opinion filed.

ROBERTSON, J., concurs and concurs in separate concurring opinion of COVINGTON, J.

COVINGTON, Judge, concurring.

I concur with the majority but do so on a somewhat different analysis from that set out in the principal opinion.

At the time of this accident, Missouri's Motor Vehicle Safety Responsibility Law, § 303.010 *et seq.,* RSMo 1978, did not mandate proof of financial responsibility. Effective July 1, 1987, proof of financial responsibility is required under what is now titled the Motor Vehicle Financial Responsibility Law, § 303.010 *et seq.,* RSMo 1986. Appellant asserts that it is the public policy of this state to facilitate compensation of victims of negligent motor vehicle operators. While this argument is persuasive, the policy currently enunciated was not the expressed public policy of this state at the time relevant to this case.

This Court in *S.A.V. v. K.G.V.,* 708 S.W.2d 651 (Mo. banc 1986), held that the doctrine of spousal immunity is no longer a bar in negligence actions and that the holding applied to all actions in which a final order, decree, or judgment had not been entered as of the date of issuance of the opinion, April 15, 1986. The effect of *S.A.V.* was not diminished by *Cameron Mut. Ins. Co. v. Proctor,* 758 S.W.2d 67 (Mo.App.1988), and *Hussman v. Gov't Employees Ins. Co.,* 768 S.W.2d 585 (Mo.App. 1989).[1]

In *Proctor,* the wife sustained injuries in an accident while a passenger in an automobile operated by her husband who died as a result of the accident. Wife and husband resided in different households at the time of the accident. Their automobile was titled in the names of both husband and wife and insured through Cameron Mutual under a policy issued in both names. The insurance policy contained the following provision that included a household exclusion clause:

This policy does not apply: (g)(2) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; [Exclusion-(g)(2) ].

*Id.* at 69.

Cameron Mutual sought a declaration that it was not required to defend or pay

**2.** An excellent amicus curiae brief has been filed on behalf of the Missouri Insurance Coalition. The brief collects the cases from other jurisdictions and points out that the holding herein is consistent with the majority rule. While that is reassuring, it is almost impossible to confirm. Each state has its unique statutory scheme which, like ours, is amended with regularity. Each state has independently developed the rules relating to spousal immunity and contribution among joint tort-feasors. The frequent changes and the differences in the statutes and the diverse tort rules make the comparison and contrast of this case with like cases of other states an elusive and exhausting enterprise.

**1.** My discussion of the effect of the *Proctor* and *Hussman* cases is adopted in major part from the language of the analysis of those cases by the Honorable Jean C. Hamilton, Missouri Court of Appeals, Eastern District, from the Eastern District's opinion in this matter.

any judgment in an action for personal injuries brought by wife against the defendant *ad litem* for her deceased husband. In affirming the trial court, the court of appeals concluded that the fact that the wife was a named insured under the policy precluded Cameron Mutual's liability under the policy. The court approved Cameron Mutual's insertion of an exclusion of liability to a named insured for her personal bodily injuries. In reaching this result, the court interpreted the first portion of the exclusion that the policy does not apply "to bodily injury to the insured...." It did not interpret the latter portion of the provision, following the disjunctive "or," containing the traditional household exclusion. The *Proctor* court thus neither fully addressed nor needed to address whether abolition of the doctrine of interspousal immunity required that particular household exclusion to be nullified on public policy grounds. The court merely found "no public policy consideration which would require [Cameron Mutual] not to exclude a named insured ... from coverage for her own bodily injuries." *Id.* at 70.

The court of appeals in *Hussman*, relying in part on *Proctor*, found family or household exclusions valid even after the abrogation of interspousal immunity. *Hussman*, 768 S.W.2d at 587. The provision at issue excluded from coverage "bodily injury to any insured." The policy defined "insured" to include "you and your relatives." The term "relatives" meant "a person related to you who resides in your household." Plaintiffs, a husband and wife living in the same house, sued another driver for damages suffered in an automobile accident in which husband had been driving. The other driver counterclaimed for damages and sought apportionment of fault as to husband. Husband sued his insurance company for indemnity, claiming the family exclusion clause in his policy void as against public policy.

The opinion in *Hussman* does not make clear whether the wife was a named in-

sured, as was the case in *Proctor*. *Proctor* was decided on grounds independent of the traditional family or household exclusion; that is, it determined the wife seeking indemnity was herself a named insured. If the wife in *Hussman* were not a named insured on the policy, then *Proctor* offers no support for the result reached in *Hussman*. If the wife were a named insured, then *Proctor* is controlling and the *Hussman* court's language with respect to the validity of family exclusion clauses is merely surplusage.[2]

Appellant argues that when the adoption of contribution is combined with the abrogation of spousal immunity, a new class of defendants, negligent spouses, is created. Although the 1978 adoption of contribution preceded the Ward's accident in 1985, that adoption, standing alone, does not affect this decision.

In sum, the cumulative effect of the Motor Vehicle Financial Responsibility Law, the adoption of contribution, and the abrogation of interspousal immunity may very well signal that the public policy of this state now favors indemnification of Larry Ward; that would be current public policy, and the Court need not decide that question today. The facts remain: the insurance liability policy purchased by Larry Ward became effective December 1, 1984; motor vehicle owners were not required to maintain financial responsibility, usually motor vehicle liability policies, until July 1, 1987, § 303.025, RSMo 1986; and spousal immunity was not abolished until April 15, 1986, *Townsend v. Townsend*, 708 S.W.2d 646 (Mo. banc 1986), and *S.A.V.*, 708 S.W.2d 646. Whatever the public policy now espoused by the State of Missouri, this Court should not by judicial fiat retroactively impose that policy on this antecedent insurance contract.

---

**2.** *Hussman* also cites *Foster v. State Farm Mut. Auto. Ins. Co.*, 750 S.W.2d 494, 496 (Mo.App. 1988), decided after the abolition of spousal immunity, as following "long-established Missouri law that a 'family exclusion clause' is

valid." *Hussman*, 768 S.W.2d at 587. The *Foster* opinion, however, never addressed the issue of the validity of family exclusion clauses; it merely determined whether appellant and her husband were members of the same household.