Jacqueline A. WILLIAMS, Personal Representative of the Estate of Buddy L. Williams, Deceased, Appellant,

v.

NATIONAL CASUALTY COMPANY, Respondent.

No. SC 85643.

Supreme Court of Missouri, En Banc.

April 27, 2004.

Joseph P. Winget, Michael J. Patton, William C. Robinson, Springfield, for appellant.

Dale L. Davis, Springfield, for respondent.

MICHAEL A. WOLFF, Judge.

## Introduction

Section 375.995.4 provides that "[t]he availability of any insurance contract shall not be denied to any insured or prospective insured on the sole basis of the sex or marital status of such insured or prospective insured.... Specific examples of practices prohibited by this section include, but are not limited to the following: ... (7) Restricting, reducing, modifying, or excluding benefits relating to coverage involving the genital organs of only one sex...." [1]

National Casualty Company provided health insurance to Buddy Williams as part of an insurance plan through his professional organization. National Casualty's certificate of insurance to Buddy Williams contained an "Exception" that excluded "any disease or disorder of the prostate."

Buddy Williams was diagnosed with prostate cancer 53 months after the policy coverage began. National Casualty denied payment of Buddy Williams' claims for nearly $60,000 in expenses for prostate cancer treatment. National's denial was based solely on the "Exception" for diseases of the prostate, an organ that only males possess.

National Casualty contends that the Exception was not invalid under the statute because sex was not the "sole basis" for the exclusion of coverage. The Exception, National Casualty contends, was inserted in Buddy Williams' certificate of insurance because he had a medical history of treatment for prostatitis (an inflammation or infection of the prostate). [2]

The policy allows for specific exclusions, called exceptions, from coverage based on pre-existing conditions as shown in the insured's medical history. The prostate is not a pre-existing medical condition. It is, in the words of the statute, a genital organ of only one sex. [3]

Buddy Williams' medical records show a history of prostatitis. There is no record of prostate cancer pre-existing the coverage. To avoid the statute's prohibition, National Casualty must show that the Exception is not on the "sole basis" of sex. National Casualty's contention is that the Exception—for all diseases or disorders of the prostate—is based on Buddy Williams' medical history of prostatitis and, therefore, is not on the "sole basis" of sex.

The record, however, fails to demonstrate any connection between Buddy Williams' prostate cancer and his pre-existing condition. Thus, the statute applies to prohibit the denial of coverage for Buddy Williams' prostate cancer.

## The Trial Court Decision and This Court's Review

Buddy Williams sued National Casualty for his medical expenses. After Buddy Williams died of prostate cancer, his widow, Jacqueline Williams, as personal representative of his estate, was substituted

---

1. Unless otherwise indicated all references are to RSMo 2000.

2. The Exception also included any disease or condition of the penis. National Casualty does not contend that erectile dysfunction is in any way related to Williams' prostate cancer. Therefore, the opinion focuses on diseases or disorders of the prostate.

3. The statute is quite explicit as to what it means to prohibit denial of coverage on the "sole basis of sex." The dissent omits the statute's specific example of "the genital organs of only one sex." Section 375.994.4(7).

as plaintiff. The case was tried on a stipulation of facts that includes the medical record of Buddy Williams at the time the policy coverage commenced.

The circuit court found that section 375.995 does not invalidate the Exception and entered judgment for National Casualty. Because this case was submitted on stipulated facts, review is confined to a determination of whether the trial court drew the correct legal conclusions from the facts so stipulated. *David Ranken, Jr. Technical Institute v. Boykins,* 816 S.W.2d 189, 191 (Mo. banc 1991) (overruled on other grounds), applying *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

"Where insurance policies are unambiguous, they will be enforced as written absent statute or public policy requiring coverage." *Peters v. Employers Mutual Casualty Co.,* 853 S.W.2d 300, 302 (Mo. banc 1993). "The parties to a purely voluntary insurance contract may agree to such terms and provisions as they see fit to adopt, subject only to the requirements that the contract is lawful and reasonable." *American Family Mutual Insurance Co. v. Ward,* 789 S.W.2d 791, 795 (Mo. banc 1990). The "Exception" will be void if it is found to violate the statute.

Following opinion by the Court of Appeals, Southern District, this Court granted transfer and has jurisdiction. Mo. Const. article V, section 10. The circuit court's judgment is reversed, and the case is remanded.

### The Insurance Coverage and Its Exception

In order to decide whether an exclusion of diseases of an organ of only one sex is valid notwithstanding the statute, it is necessary to examine the insurance policy to determine whether there is a legitimate basis for refusing coverage. National Casualty contends that its refusal to cover expenses of Williams' prostate cancer was not on the "sole basis" of sex because there was a policy exclusion—based on Williams' medical history of a pre-existing condition—that provided a legitimate basis for its refusal. The validity of the other reason—a pre-existing condition—is dependent on the language of the policy.

Buddy Williams obtained a "certificate or policy of insurance from [National Casualty] pursuant to an insurance plan of the National Association of Professional Agents," under which health insurance is provided by National Casualty to insurance agents and their employees. Buddy Williams' certificate of insurance, which also covered his wife, was effective August 1, 1994. National Casualty provided coverage to members of the association and was allowed to write exceptions in individual certificates of insurance, pursuant to provisions of the policy, upon unsatisfactory evidence of individual insurability, in other words, upon evidence of pre-existing conditions.[4] On the application for coverage, Buddy Williams indicated that he suffered from prostatitis. Williams' medical records confirmed that he was treated in the past for chronic prostatitis.

The policy provides "Major Medical Benefits" that include "allowed charges" that are *"medically necessary* to the diagnosis or treatment of an *illness* or *injury"* ... and are not "excluded anywhere in the policy ...". The coverage under the policy is subject to limitations for pre-existing conditions. A pre-existing condition is either "a condition for which a

---

4. The plan is not in the record, but the record contains the certificate of insurance that National Casualty issued to Williams with the provisions relating to exclusions. The words "certificate" and "policy" appear to be used interchangeably.

covered person received medical advice or treatment within 24 months" prior to the effective date of coverage or "a condition which, in the opinion of a qualified doctor" began before the policy date and "produced symptoms that would cause an ordinarily prudent person to seek diagnosis or treatment within 12 months immediately preceding the date he or she became insured under the policy." The policy permits exclusion of pre-existing "conditions" going back beyond that 24–month period where they are "excluded by name or specific description." [5]

In the policy or certificate issued to Buddy Williams there is no pre-existing condition of the prostate "excluded by name or specific description." There is, however, an "Exception Endorsements" section that excludes "any disease or disorder" of the prostate. That section provides:

### EXCEPTION ENDORSEMENTS

\* \* \*

No benefits will be paid under this certificate of insurance, or under any rider or amendment thereto, for disability, loss or expense resulting from or caused by any disease or disorder of the prostate, seminal vesicles, urinary bladder or urethra, including any treatment or operation for or complications thereof suffered by Bud L. Williams.

### Is the Exception for All Diseases of the Prostate Valid?

Buddy Williams was diagnosed with prostate cancer in December 1998, 53 months after the effective date of coverage. Prior to Williams' death, he incurred medical expenses for the care and treatment of his prostate cancer and related problems. National Casualty refused to pay the expenses because, although the cancer occurred more than 24 months after the effective date of the policy, Williams had sought treatment for prostatitis within the 24 months preceding the effective date. This pre-existing condition of prostatitis, the company argues, justifies the specific exclusion for "any disease or disorder of the prostate."

The issue, then, is: Does the "Exception" of "any disease or disorder of the prostate" violate section 375.995.4 because it is on the "sole basis" of sex since it relates to "the genital organs of only one sex," or does a pre-existing condition of

---

5. The provisions in the certificate governing pre-existing conditions are as follows:

    Section XV—Pre-existing Condition Limitations
We will pay the benefits of the policy for *Allowed Charges* that are due to a *pre-existing condition,* subject to the rules set forth below:
    . . .
2. Coverage of the *pre-existing condition* must not be excluded or limited by name or specific description.
    . . .
No claim for *Allowed Charges* incurred more than 24 months after a person became a *covered person* will be reduced or denied solely on the grounds that the expense is due to a *pre-existing condition* unless the condition was excluded or limited by name or specific description prior to the date the charge is incurred.
    . . .
As used in this section, *"pre-existing condition"* means a condition to which either "1" or "2" below applies.
1. A condition for which a *covered person* received medical advice or treatment within 24 months immediately preceding the date he or she became insured under the policy.
2. A condition which, in the opinion of a qualified doctor: (a) began prior to the date of the *covered person's* coverage under the policy; and (b) produced symptoms that would cause an ordinarily prudent person to seek diagnosis or treatment within the 12 months immediately preceding the date he or she became insured under the policy. (Emphasis in document.)

prostatitis make the "Exception" valid because the exclusion is not on the "sole" basis of sex?

The certificate does not define "condition."[6] The dictionary defines "condition" as "something needing remedy," "a state of being" or "the physical status of the body as a whole or of one of its parts—usually used to indicate abnormality."[7]

The prostate is not a "condition." It is an organ; specifically, it is a gland situated at the base of the bladder in males that secretes a fluid that makes up part of the semen.[8] Prostatitis—an inflammation or infection of the prostate gland—is a condition. Likewise, prostate cancer—a malignant growth of new cells in the prostate—is a condition.

National Casualty argues that the "Exception" of any disease or disorder of the prostate was validly based on Williams'

disclosed pre-existing conditions. The policy defines what makes a condition "pre-existing." But the "Exception" goes well beyond the policy's allowance for excluding pre-existing conditions "by name or specific description." By the clear terms of the policy, the word "prostate" is not the name or specific description of a "pre-existing condition." If the "Exception" had named or described "prostatitis," this disease or disorder would validly have been excluded as a pre-existing condition, and its exclusion would not have been on the "sole basis" of sex.

The prohibition of exclusions from health insurance coverage on the "sole basis" of sex in section 375.995.4 was enacted in 1986. This case is apparently of first impression under the statute. Similar laws and regulations have been enacted in 26 other states.[9] There apparently are no

**6.** The policy states that the definitions of certain words used in the certificate are "set forth in the General Glossary section. To help identify these defined words they have been printed within the text of the certificate in *Italics*." The word "condition" is not found in the glossary nor is it printed in *Italics* anywhere in the text of the certificate. The certificate uses the terms *"illness"* and *"injury"* when listing what expenses may be reimbursed as *"allowed charges."* "Illness" is defined in the certificate as a sickness, disease, or physical disorder. "Injury" is defined as an accidental bodily injury.

**7.** WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 475 (1993).

**8.** Explanations of medical terms and concepts are based on common dictionary definitions. See, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1821, 325 (1993).

**9.** The following states have statutory and/or regulatory provisions similar to section 375.995: Arizona (Ariz. Admin. Comp. R20–6–209 (1977)), Arkansas (Ark. Ins. Rule & Reg. 19 (1985)), California (Cal. Admin. Code Title 10 §§ 2560–2560.6 (1973), Cal. Ins.Code § 679.71 (1975)), Florida (Fla. Ad-

min. Code § 4–125.001 (1978)), Illinois (Ill. Admin. Reg. Title 50 §§ 2603.10–2603.60 (1976)), Iowa (Iowa Admin. Code §§ 191–15.11 (1997)), Kansas (Kan. Admin. Regs. § 40–1–31 (1977/1986)), Michigan (Mich. Comp. Laws § 500.2027 (1977)), Minnesota (Minn.Stat. § 62E.08 (1982)), Montana (Mont. Ins. Dept. Reg. §§ 6.6.1202–6.6.1203 (1979), Mont.Code Ann. § 49–2–309 (1985)), Nebraska (Neb. Admin. R. Title 210 ch. 28 (1977/1994)), Nevada (Nev. Ins. Reg. § 686A.110–686A.150 (1977)), New Jersey (N.J. Admin. Code Title 11 §§ 1–4.2 to 1–4.3 (1975/1986)), New York (N.Y. Ins. Reg. § 52.41 (1983), N.Y. Ins. Law § 26.07 (1984)), North Carolina (N.C. Admin. Code Title 11 ch. 4 § 0317 (1979)), North Dakota (N.D. Admin. Code §§ 45–03–10–01 to 45–03–10–04 (1988)), Oklahoma (Okla. Ins. Regs. § 365:10–1–9 (1993)), Oregon (Or. Admin. R. §§ 836–80–050 to 836–80–060 (1975)), Pennsylvania (31 PA. Admin. Code §§ 145.1–145.5 (1977)), South Dakota (S.D. Codified Laws Ann. §§ 58–33–13.1 to 58–33–13.2 (1980)), Tennessee (Tenn. Ins. Rules ch. 0780–1–34 (1976)), Texas (Tex. Admin.Code §§ 21.401 21.409 (1978/1985)), Utah (Utah Ins. R590–83 (1980/1989)), Vermont (VT. Admin. Comp. Ins. Dept. R. I–89–1 (1989)), Washington (Wash. Rev.Code § 48.30.300

reported cases, under such statutes, involving whether a pre-existing prostatic infection or inflammation can justify denial of coverage for prostate cancer. Nor, to consider an analogous exclusion for females, do there appear to be case reports of denial of coverage for ovarian or cervical cancers based on pre-existing infections or inflammations of female sex organs.

■ On its face, National Casualty's exclusion of "any disease or disorder of the prostate" appears to violate the statute, whose remedial purpose is clear.[10] "All canons of statutory construction are subordinate to the requirement that the court ascertain and apply a statute in a manner consistent with the legislative intent." *Budding v. SSM Healthcare System,* 19 S.W.3d 678, 682 (Mo. banc 2000).

■ To interpret the statute faithfully to its legislative intent and stated purpose, the Court applies the general principle that, where an insurer seeks to escape coverage because of a policy exclusion, the burden is on the insurer to show facts that make the exclusion applicable. *Mission Insurance Co. v. Ward,* 487 S.W.2d 449, 451 (Mo.1972).

Accordingly, where an exclusion of organs "of only one sex" appears, the insurer has the burden of producing evidence that its exclusion was not based "solely" on sex, but on some other—legitimate—reason.

National Casualty did not produce any evidence on this record—which includes Buddy Williams' medical records—of a pre-existing prostate cancer condition. Nor does the record show any link between Williams' prostatitis and his subsequent prostate cancer that might justify the exception's broad exclusion of any disease or disorder of the prostate.[11]

This interpretation of the statute and the insurance certificate does not mean, as Williams appears to argue, that section 375.995.4(7) prohibits an insurance company from legitimately excluding a pre-existing condition that affects organs and related conditions specific to one sex. An exclusion of pre-existing "conditions"—not entire organs or organ systems—would appear to be based not "solely" on sex even though those conditions affect organs possessed by only one sex. But the exclusion in Buddy Williams' certificate of insurance was of a pre-existing organ, not a pre-existing condition.

Since the prostate is a genital organ of only one sex, the "Exception" violates the statute in the absence of evidence that the "Exception" is also based on a pre-existing condition.

The judgment of the circuit court is reversed, and the cause is remanded.

(1975–1976)), and Wisconsin (Wis. Admin. Code § Ins. 6.55 (1976)).

10. "The purpose of this section is to eliminate the act of denying insurance benefits or coverage on the sole basis of sex or marital status in any terms or conditions of insurance contracts and in the underwriting criteria of insurance carriers." Sec. 375.995.2.

11. The dissenting opinion gives some details of Williams' medical history, but that history provides no evidence to support a conclusion that the pre-existing prostatitis was in any way linked to his subsequent development of

prostate cancer. The medical records show that Williams had regular PSA blood tests which screen for prostrate cancer—before and after becoming insured under the policy in 1994. All such PSA tests were normal until November 1998. After the November 1998 PSA test results, Williams' prostrate was biopsied and the cancer diagnosis was made in December, 53 months after coverage began. In the absence of evidence of a pre-existing condition, the exclusion of any and all conditions of the prostate "exclud[es] benefits relating to coverage involving the genital organs of only one sex" and is therefore on the "sole basis" of sex. Section 375.995.4.

STITH, PRICE and TEITELMAN, JJ., concur.

BENTON, J., dissents in separate opinion filed.

WHITE, C.J. and LIMBAUGH, J., concur in opinion of BENTON, J.

DUANE BENTON, Judge, dissenting.

Because benefits here were not denied on the sole basis of the sex of the insured, I dissent.

The facts are stipulated. On June 21, 1994, Buddy Williams—an AFLAC insurance salesman—applied for group health insurance. On the application, he checked a box that within the last 10 years, he had "any symptom, diagnosis, or treatment for ... [k]idney disorder, bladder infections, *prostatitis*, uterine disorders or any other disorder of the genito-urinary system." The word "prostatitis" was underlined on the application. An "attached sheet," explaining the answer, is not part of the record.

Between June 21, 1994, and August 1, 1994, the company requested and reviewed Williams' medical records. They revealed that on March 13, 1992, Williams complained of "pain," and was first diagnosed with chronic prostatitis. Three months later, Williams was seen for the same complaints, and diagnosed with "erectile dysfunction with a history of chronic prostatitis."

In 1993, Williams visited his doctor twice regarding his prostate. A January examination notes that the prostate "feels benign." The other visit, in October 1993—the last examination before issuance of the policy—reveals "a questionable small calculus" in the prostate. The "Impression:" paragraph—where a diagnosis was listed before—is blank on the October 1993 entry.

On August 1, 1994, the company issued an insurance policy. It included an "Exception Endorsement":

> No benefits will be paid under this certificate of insurance or under any rider or amendment thereto, for disability, loss or expense resulting from or caused by any disease or disorder of the prostate, seminal vesicles, urinary bladder or urethra, including any treatment or operation for or complications thereof suffered by Bud L. Williams.

The Exception Endorsement is part of the "Schedule of Benefits." The "Pre-Existing Condition Limitations" are a separate exception to the policy. The parties stipulated that except for the Exception Endorsement, "there are no other provisions, conditions or exclusions in defendant's policy that are applicable that would have the effect of precluding coverage to plaintiff for the medical expenses incurred by Buddy Williams in connection with his treatment of prostate cancer."

The only issue is whether section 375.995 invalidates the Endorsement. The purpose of section 375.995 is to prohibit "denying insurance benefits or coverage on the *sole* basis of sex or marital status in any terms or conditions of insurance contracts...." *Section 375.995.2* (emphasis added). The title of the bill states its subject as "to prohibit unfair sex discrimination." *S.B. 527, 1985 Mo. Laws 845.* The precise prohibition is:

> The availability of any insurance contract shall not be denied ... on the *sole* basis of the sex or marital status of such insured.... Neither the amount of benefits payable under a contract, nor any term, condition, or type of coverage within a contract, shall be restricted, modified, excluded, or reduced *solely* on

the basis of the sex or marital status of the insured....

*Section 375.995.4* (emphasis added).

Here, the company did not exclude benefits on the sole basis of sex. It excluded coverage after a good-faith review of the medical records of a specific person.

The principal opinion emphasizes that the exclusion was for an organ—rather than a "pre-existing condition." The policy covers pre-existing conditions, unless specifically excluded. The majority is correct that, in the Exception Endorsement, the policy did not exclude a pre-existing condition. Instead, the policy went further and excludes a particular organ, the prostate.

True, subsection 375.995.4(7)—read alone—prohibits excluding benefits for male organs. However, it is controlled by the stated purpose and plain intent of the section, so that to be illegal, an exclusion must be solely based on the type of organ, with no medical information on the specific person. Here, the policy excluded benefits based upon a review of Williams' medical history. Prior medical history is a legitimate basis to deny coverage.

The language of section 375.995 is unambiguous. "Sole" or "solely" are used three times in three operative sentences. The definition of these terms is: "alone" and "that is such and no other." *Webster's Third New International Dictionary* 2168 (1993). The exclusion of the prostate, to violate the statute, must be based upon sex, and sex alone. Here, that was not the case—the company made the exclusion based on Williams' medical history.

"The parties to a purely voluntary insurance contract may agree to such terms and provisions as they see fit to adopt, subject only to the requirements that the contract is lawful and reasonable." *American Family Mutual Insurance Co. v. Ward,*

789 S.W.2d 791, 795 (Mo. banc 1990). Courts should not interfere with a party's right to contract so long as the contract is not otherwise void. *Malan Realty Investors v. Harris,* 953 S.W.2d 624, 627 (Mo. banc 1997).

Here, Williams had chronic prostatitis, plus other problems. Benefits were not denied on a group basis (sex), but on an individual basis (medical history). In terms of the statute's scope, what happened here is fair and legal, not unfair and illegal.

Williams' prostate was not excluded from coverage on the sole basis of his sex. The exclusion did not violate section 375.995.4. Therefore, I dissent.