**SHELTER MUTUAL INSURANCE COMPANY, Plaintiff–Respondent,**

v.

**Johney L. HANEY, Defendant,**

and

**Mary Haney, Intervenor–Appellant.**

No. 17435.

Missouri Court of Appeals, Southern District, Division One.

Feb. 18, 1992.

Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla, for intervenor-appellant.

Kenneth A. Wagoner, Brill, Moore & Wagoner, P.C., West Plains, for plaintiff-respondent.

CROW, Judge.

In this appeal we must decide, among other things, whether a family exclusion clause in three policies of automobile liability insurance issued *before* the effective date of The Motor Vehicle Financial Responsibility Law [1] (July 1, 1987) is enforce-

---

1. C.C.S.H.C.S.S.B. 424, Laws of Missouri 1986, pp. 824–32, codified as §§ 303.010–.370, RSMo 1986.

able where the driver is sued because of an accident occurring *after* that date. The pertinent facts are undisputed.

On February 10, 1988, C.A. Haney ("C.A.") was a passenger in a 1985 Chevrolet Caprice owned by him and being operated, with his permission, by his son, Johney L. Haney ("Johney"), then age 31. The Caprice collided with another vehicle, resulting in C.A.'s death. Johney survived.

On the date of the collision, three policies of automobile liability insurance issued by Shelter Mutual Insurance Company ("Shelter") were in force. Each had been issued May 29, 1987.

Policy 24–1–2656876–1 named C.A. as the insured and identified the Caprice involved in the collision as the "described automobile."

Policy 24–1–4043153–1 named Johney as the insured and identified a "1981 FORDT C30 1 TON" as the "described automobile."

Policy 24–1–4043153–2 named Johney as the insured and identified a "1976 CHEVR VAN G10" as the "described automobile."

Each policy provided coverage for bodily injury liability ("Coverage A") and property damage liability ("Coverage B"). The limits of Coverage A in each policy were $100,000 "each person," and $300,000 "each accident." Each policy contained this provision:

Coverages A and B do not apply to:

. . . .

Bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.

On the date of the collision, Johney was residing with C.A. and the latter's wife, Mary (Johney's mother), in the same household.

On February 10, 1989, Mary sued Johney for the wrongful death of C.A. § 537.080, RSMo 1986. We henceforth refer to that case as "Mary's suit."

On December 5, 1989, Shelter commenced the instant case against Johney, seeking a judgment declaring (a) none of the three policies provide Johney bodily injury liability coverage for the alleged wrongful death of C.A., and (b) Shelter owes Johney no duty to defend him in Mary's suit.

Mary moved for, and was granted, leave to intervene in this case. Thereafter, the case was submitted to the trial court on stipulated facts.

The trial court, relying on *American Family Mutual Insurance Co. v. Ward,* 789 S.W.2d 791 (Mo. banc 1990), found the family exclusion clause in each policy (quoted *supra*) valid. Consequently, the trial court ruled none of the policies provided Johney liability coverage for C.A.'s death, and Shelter had no duty to provide Johney a defense in Mary's suit.

Mary, alone, appeals.[2] She presents one point relied on:

The trial court erred in … finding that there was no insurance coverage in that such judgment … erroneously declares and applies the law, since the … finding which denies coverage is based on the "family exclusion" clause of the insurance policy, and application of such … clause is erroneous because:

A. The "family exclusion" has been rendered void as against the public policy of this State as set forth in The Motor Vehicle Financial Responsibility Law, and

B. By its own terms, the policy of insurance is deemed modified so as to comply with state law existing at the time of the … accident.

Although the point uses the singular term "insurance policy," we infer Mary intends the point to apply to all three insurance policies.

■ While this appeal was pending, the Supreme Court of Missouri decided *Halpin v. American Family Mutual Insurance Company,* 823 S.W.2d 479 (Mo. banc 1992).

---

2. Shelter does not challenge Mary's standing to appeal. *See: Shelter Mutual Insurance Co. v.*

*Briggs,* 793 S.W.2d 862, 863–64 (Mo. banc 1990).

There, a policy of automobile liability insurance stated coverage did not apply to bodily injury to, among other persons, the insured or anyone related to the operator and residing in the operator's household. *Halpin* held The Motor Vehicle Financial Responsibility Law ("the FRL") "effects a partial invalidity" of such clauses. *Halpin*, at 480.

*Halpin* explained that § 303.025, RSMo 1986 [3] (a part of the 1986 legislation identified earlier [4]), and § 303.190, RSMo 1986 [5] (unchanged by the 1986 legislation) require a contract of liability insurance to provide the coverage specified in § 303.190 so the insured will be in compliance with § 303.025. *Halpin*, at 481.

*Halpin* declared the plain purpose of the 1986 legislation was to ensure that people injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators, and this protection extends to occupants of the insured vehicle. *Halpin*, at 482. Such purpose would be incompletely fulfilled if the "household exclusion clause" (as *Halpin* characterized it) were fully enforced. *Id.*

*Halpin* rejected the notion that because § 303.160, RSMo 1986, provides alternate methods for proving financial responsibility, the FRL is not a compulsory insurance law. *Halpin*, at 481. Observing that the great majority of motor vehicle owners will undertake to maintain financial responsibility by means of motor vehicle liability insurance policies, *Halpin* stated, "The statute is, for all practical purposes, a compulsory insurance law." *Id.*

However, as we understand *Halpin*, the FRL did not render the household exclusion clause entirely void. Because § 303.190.2 [6] requires motor vehicle liability insurance policies to provide coverage in only the amounts specified therein, insurers and their policyholders are free to make insurance contracts containing household exclusion clauses affecting coverage in excess of the amounts required by § 303.190.2. *Halpin*, at 482–83. *Halpin* states § 303.190.7, RSMo 1986,[7] manifests to insureds that

3. Section 303.025 reads:

  1. No owner of a motor vehicle registered in this state shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers his operation of the other's vehicle.

  2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

  . . . .

4. Footnote 1, *supra.*

5. Section 303.190 reads:

  1. A "**motor vehicle liability policy**" as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified . . . as proof of financial responsibility, and issued . . . by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

  2. Such owner's policy of liability insurance:

  (1) Shall designate . . . all motor vehicles with respect to which coverage is thereby to be granted; and

  (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles . . . subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

  3. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him . . . and subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

  . . . .

6. Footnote 5, *supra.*

7. Section 303.190.7 reads:

  Any policy which grants the coverage required for a motor vehicle liability policy may

they have no basis for expecting coverage in excess of the requirements of § 303.-190.2. *Halpin*, at 483.

If *Halpin* applies to the three policies here, it (a) nullifies each one's family exclusion clause insofar as the exclusion purports to deny coverage in the amounts specified by § 303.190.2, but (b) leaves the exclusion clauses intact as to any coverage exceeding those amounts.

■ In determining whether *Halpin* applies, we note *Halpin* and the instant case are alike in one respect. In both, the accident occurred *after* the effective date of the FRL (July 1, 1987).

However, in the instant case all three policies were issued *before* the effective date of the FRL. In *Halpin* it appears from the dissent of Robertson, C.J., that the policy was issued *after* the effective date of the FRL. In that respect, *Halpin* and the instant case differ.

Shelter reminds us that even after enactment of the FRL, a household exclusion clause in an automobile liability insurance policy was held valid and enforceable where the policy was issued before the effective date of the FRL and the accident occurred before that date. *Ward*, 789 S.W.2d 791.

The Eighty-third General Assembly enacted the FRL during the Second Regular Session that adjourned May 15, 1986. Laws of Missouri 1986, "Effective Date of Laws," p. 4. The FRL was approved June 10, 1986. Laws of Missouri 1986, pp. 832, 1177, 1179. Therefore, the FRL was a matter of legislative record more than a year before it took effect.

The three policies here were issued 32 days before the FRL took effect, but more than a year after it was enacted. The instant case obviously falls between *Ward* and *Halpin*.

Mary argues that when Shelter issued the three policies it had full knowledge that

the FRL would take effect 32 days hence. Therefore, says Mary, Shelter "was in position to assess and collect a premium based upon that knowledge, and did so." Mary concedes the family exclusion clauses would have barred coverage had the collision occurred before July 1, 1987, but she maintains that when the FRL took effect it rendered the exclusions void from that day forward.

Shelter insists that because the three policies were issued before the FRL took effect, it should not apply to them.

Guidance on this issue is found by studying *Halpin* in conjunction with the opinion of the Supreme Court of Missouri in the consolidated appeals of *Hartman v. Hartman*, No. 73514, and *Armstrong v. Armstrong*, No. 73568, 821 S.W.2d 852 (Mo. banc 1991). In *Hartman* and *Armstrong*, the Supreme Court abrogated the "parental immunity doctrine" and held unemancipated minor children may bring negligence actions against their parents.

*Halpin* arose from an automobile accident May 12, 1990, 19 months *before* abrogation of parental immunity in *Hartman* and *Armstrong*. In *Halpin*, two minor children were passengers in an automobile owned by their parents. The mother was driving. A collision occurred. In response to an inquiry by a lawyer representing the children, the insurer of the parents' automobile, relying on the household exclusion clause in the policy, denied coverage of claims by the children for their injuries. The parents brought an action individually and as next friends for the children, seeking a declaration that the household exclusion clause was void.

As we have seen, the Supreme Court of Missouri in *Halpin* held the FRL rendered the household exclusion clause void insofar as it purported to deny coverage in the amounts required by § 303.190.2, but unimpaired as to any coverage exceeding those amounts.

also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect

to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

In his dissent in *Halpin*, Robertson, C.J., emphasized that when the insurance policy was issued, Missouri law forbade the children from suing their parents. That was still true when the collision occurred. Pointing out that § 303.020(10) defines proof of financial responsibility as proof of ability to respond in damages for *liability*, the dissent reasoned that neither the parents nor the insurer intended the policy to insure the parents against the children's claims. Because the FRL requires insurance only where there is liability, and there was no liability by the mother for the children's injuries in *Halpin* until parental immunity was abrogated 19 months after the collision, the dissent maintained the FRL should not affect the household exclusion clause.

The other six Supreme Court judges obviously found the dissent in *Halpin* unpersuasive, as evidenced by the holding that the FRL required the insurer to provide coverage for the children's claims in the amounts required by § 303.190.2.

In a concurring opinion in *Halpin* in which two other judges joined, Judge Thomas asserted the insurer knew it was writing the policy in Missouri where the FRL required coverage of liability imposed by law for damages arising out of the use of the insured vehicle, and also knew the law regarding liability "is subject to change from time to time."

Here, Shelter cannot claim the changes implemented by the FRL were unexpected when Shelter issued the three policies in question. The FRL was enacted more than a year earlier. Shelter issued all three policies the same date—32 days before the FRL took effect. Each policy covered a period extending into May, 1988. Shelter therefore knew the FRL would take effect while the policies were in force. The fatal collision occurred seven months after the FRL took effect.

When we compare the circumstances in the preceding paragraph with those in *Hal-*

*pin*, we note that there, parental immunity existed (a) at the time the policy was issued, (b) at the time of the collision, and (c) for a period of 19 months after the collision. Only when parental immunity was judicially abolished did the mother in *Halpin* become legally liable for her children's injuries,[8] and only when that liability arose could the FRL affect the insurance policy. The Supreme Court nonetheless held the FRL applied.

When the policies were issued in the instant case, Missouri law already allowed a mother to sue her adult son residing in her household for the wrongful death of her husband (the son's father) allegedly caused by the son's negligence. *Taylor v. Taylor*, 360 Mo. 994, 232 S.W.2d 382 (1950). The only change in Missouri law that occurred here was that the FRL took effect 32 days after the policies were issued, a change preordained over a year earlier when the FRL was enacted.

To us, the circumstances in the instant case present stronger grounds for applying the FRL than those in *Halpin*. We are therefore convinced the Supreme Court of Missouri would apply the FRL here.

Shelter advances sundry arguments imploring us to hold the FRL does not impair family exclusion clauses. Similar arguments were considered and rejected in *Halpin*. We are constitutionally controlled by *Halpin*. Mo. Const. art. V, § 2 (1945); *State v. Wilson*, 795 S.W.2d 590, 591[1] (Mo.App.1990). Accordingly, we deny Shelter's arguments without further discussion.

■ However, Shelter presents an argument pertaining to only C.A.'s policy that requires consideration. Shelter asserts, "Regardless of the ... effect of the [FRL] on the family exclusion in the policies in question, there can in no event be any coverage under the policy issued to C.A. Haney, because [he] was the named insured under that policy, which also contains an exclusion for 'bodily injury to the insured.'"

---

**8.** *Hartman* and *Armstrong* hold the abrogation of parental immunity shall apply to, among other cases, those in which appealable orders had been entered by trial courts and in which the aggrieved party or parties had preserved such issue in a timely manner for appellate review as of the date that opinion was issued. *Id.*, at 858.

It is obvious that in the above respect, the instant case differs from *Halpin*. There, neither of the persons injured (two minor children) was the named insured. They were merely passengers in an automobile being driven by their mother, one of the insureds. We must therefore decide what effect the FRL has on a family exclusion clause in a motor vehicle liability policy where, as here, the named insured is fatally injured when his vehicle is being driven by another with his permission.

Shelter cites two cases in support of its contention that the family exclusion clause in C.A.'s policy should be upheld: *Cameron Mutual Insurance Co. v. Hughes*, 690 S.W.2d 424 (Mo.App.1985), and *Cameron Mutual Insurance Co. v. Proctor*, 758 S.W.2d 67 (Mo.App.1988).

In *Hughes*, the owner of an automobile was riding in it as a passenger; the automobile was being driven by one Julien. The automobile was covered by a liability insurance policy wherein the owner was the named insured. A one-vehicle accident occurred, fatally injuring the owner and Julien. The owner's parents filed a wrongful death action against Julien's personal representative. Pointing out that the insurance policy contained a clause excluding coverage for bodily injury to (among others) the insured, the Western District of this Court held the policy afforded no coverage for the owner's death.

In *Proctor*, a woman was riding as a passenger in a vehicle operated by her estranged husband. An accident occurred, injuring her and killing him. She sued his defendant ad litem for her personal injuries. At the time of the accident, an insurance policy covered the vehicle and listed the woman and her husband as named insureds. A clause excluded coverage for bodily injury to (among others) the insured. The Western District of this Court held that inasmuch as the woman was a named insured, there was no coverage for her injuries. The woman argued that because interspousal tort immunity had been abolished in Missouri, public policy required that the exclusion be declared void. The opinion stated no public policy consideration exists barring the insurer from excluding a named insured from coverage for her own bodily injuries. 758 S.W.2d at 70[2].

*Hughes* and *Proctor* are undeniably in point. However, we believe the FRL, as interpreted in *Halpin*, has superseded them.

*Halpin* points out that § 303.025.1 [9] provides that no owner of a motor vehicle registered in Missouri shall operate it or authorize anyone else to do so unless the owner maintains financial responsibility as required by the FRL. *Halpin*, at 480–81. *Halpin* further points out that § 303.190.-2 [10] provides that an owner's policy of liability insurance shall insure the person named therein and any other person, as insured, using the vehicle with the express or implied permission of the named insured, *against loss from liability imposed by law* for damages arising out of the ownership, maintenance or use of such vehicle in the amount of $25,000 because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, $50,000 because of bodily injury to or death of two or more persons in any one accident, and $10,000 because of damage to, or destruction of, property of others in any one accident. *Halpin*, at 481. *Halpin* declares the insureds and the insurance carrier undoubtedly intended that the insurance contract would protect the insureds from sanctions against uninsured drivers provided for in chapter 303, RSMo 1986. *Halpin*, at 481.

We believe the Supreme Court of Missouri would hold that §§ 303.025 and 303.-190.2 forbade C.A. from allowing anyone to drive his Caprice unless his insurance covered the driver against loss from liability imposed by law in the amounts specified in § 303.190.2(2). If C.A.'s death was a direct result of Johney's negligence, there will be "liability imposed by law" on Johney in Mary's suit for C.A.'s death arising out of Johney's use of the Caprice. If we correctly comprehend *Halpin*, the FRL requires C.A.'s policy to insure Johney against such liability in the mandated amounts.

**9.** Footnote 3, *supra*.

**10.** Footnote 5, *supra*.

In that regard, C.A.'s policy contained this provision:

> With respect to the insurance afforded under Coverages A and B, the following are insureds:
>
> (a) With respect to the described automobile, (1) the named insured and ... (2) any other person using such automobile with the permission of the named insured ... provided his actual operation ... is within the scope of such permission....

Johney was indisputably an insured driver under C.A.'s policy during the fatal journey February 10, 1988. In these circumstances we believe the FRL, as interpreted in *Halpin*, provides Johney $25,000 of liability coverage under C.A.'s policy for C.A.'s death.

■ The next problem is the effect of *Halpin* on Johney's two policies. Each contained a provision granting Johney liability coverage while he was driving a "non-owned" automobile with its owner's permission. However, the family exclusion clause in each policy barred coverage for bodily injury to any member of the family of the insured (Johney) residing in the same household as the insured. Does the FRL, as interpreted in *Halpin*, partially nullify the family exclusion clause in each of Johney's policies, thereby providing Johney $25,000 coverage under each of them for C.A.'s death?

We believe not. As we comprehend *Halpin*, a family exclusion clause in a motor vehicle liability policy will be held void insofar as it purports to deny coverage in the amounts required by § 303.190.2, but valid as to coverage exceeding those amounts.

As we have seen, the first sentence of § 303.025.1 [11] forbids the owner of a motor vehicle from driving it or allowing anyone else to do so unless the owner maintains financial responsibility. *Halpin* holds this requirement is satisfied by a motor vehicle liability policy covering the driver in the amounts required by § 303.190.2. Earlier,

we held C.A.'s policy provides Johney that coverage if he is adjudicated liable for C.A.'s death. Consequently, the financial responsibility requirement is fulfilled here by C.A.'s policy.

Were we to apply *Halpin* to the family exclusion clause in each of Johney's policies, the result would be thrice the coverage required by the FRL.[12]

In *Halpin*, the parents maintained the household exclusion clause should be invalidated "to the full limits of the coverage," which exceeded the amounts required by § 303.190.2. Rejecting that contention, the Supreme Court pointed out its decisions recognize freedom of contract in liability insurance. *Halpin*, at 483. The Court explained, "When the contract language is clear, as it is here, exceptions based on public policy must usually find support in necessary implication from statutory provisions." *Id.*

We find nothing in the FRL or *Halpin* requiring liability coverage exceeding the amounts specified in § 303.190.2. We therefore detect no reason to disregard the family exclusion clause in either of Johney's policies. We hold the trial court was correct in declaring neither of Johney's policies provided him liability coverage for C.A.'s death.

One final issue remains. The judgment won by Shelter in the trial court declared Shelter had no duty to provide Johney a defense in Mary's suit. This ruling was obviously based on the premise that the family exclusion clause in each of the three policies was valid. What is the effect of *Halpin* on Shelter's duty to defend Johney in Mary's suit?

C.A.'s policy contained a provision obligating Shelter to defend any suit seeking damages for liability covered by the policy. Neither in the trial court nor here did Shelter seek a declaration regarding its duty to defend Johney in Mary's suit if the family exclusion clause in C.A.'s policy was held partially invalid as to the bodily injury liability coverage.

---

**11.** Footnote 3, *supra.*

**12.** Each of Johney's policies provides that Coverage A (bodily injury liability) with respect to a

non-owned automobile shall be excess coverage over any other valid and collectible insurance.

It seems likely that inasmuch as *Halpin* provides Johney $25,000 coverage under C.A.'s policy if Johney is held legally liable for damages because of C.A.'s death, Shelter will now want to provide Johney a defense in Mary's suit. If that is Shelter's choice, there is no reason to judicially determine the effect of *Halpin* on Shelter's duty to defend.

Because this subject was not litigated in the trial court nor briefed here, we decline to address it in this appeal. *Halpin* requires reversal of that part of the trial court's judgment declaring C.A.'s policy provides Johney no liability coverage for C.A.'s death. We also reverse the trial court's judgment insofar as it declares Shelter has no duty under C.A.'s policy to provide Johney a defense in Mary's suit. When the case reaches the trial court on remand, the trial court should allow Shelter a reasonable opportunity to raise, by amended pleading if necessary, the issue of Shelter's duty under C.A.'s policy to defend Johney in Mary's suit in light of *Halpin*.

If Shelter chooses to seek a declaration that it owes Johney no such duty, the trial court shall rule on the issue. If Shelter seeks no such declaration, the subject is moot.

In either event, the trial court should enter a new judgment declaring Shelter's obligation to Johney under the bodily injury liability coverage in C.A.'s policy in accordance with *Halpin* and this opinion.

The judgment of the trial court is affirmed except the portions pertaining to policy 24–1–2656876–1, which are reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

PREWITT, P.J., and PARRISH, J., concur.