**ALLSTATE INS. CO.,**
**Plaintiff-Appellant,**

v.

**Daniel F. SULLIVAN, et al.,**
**Defendants-Respondents.**

**No. 43990.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 21, 1982.

Motion for Rehearing and/or Transfer
Denied Nov. 19, 1982.

---

1. Section 452.330.1, RSMo (Supp.1981).

Daniel T. Rabbitt, Gary E. Snodgrass, St. Louis, for plaintiff-appellant.

Kenneth Bini, Louis Riethmann, St. Louis, for defendants-respondents.

SMITH, Presiding Judge.

Allstate Insurance Company appeals from a declaratory judgment of the trial court that Allstate's insurance policy covers defendant Sullivan for an accident occurring while he was driving a rental car owned by Budget Rent A Car. We affirm.

Sullivan rented an automobile from Budget at the St. Louis Municipal Airport. As he was driving the car while intoxicated [1] Sullivan had an accident in which defendants Buckleys and Hall were allegedly injured. Budget had a policy of insurance with Allstate. Defendant, Liberty Mutual, was Sullivan's personal insurer. Allstate's policy covered the "Named Insured" (Budget) and through an omnibus clause "any other person while using an owned automobile ... with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission..." Budget, as part of its established car rental fee and not as a supplemental charge, provided $100,000/$300,000 liability insurance through the Allstate policy to persons renting its cars. The rental agreement between Budget and Sullivan contained this provision:

"2. The following restrictions are cumulative and each shall apply to every use, operation or driving of vehicle. Under no circumstances should vehicle be used, operated or driven by any person:
...
(f) While under the influence of intoxicants or narcotics...." [2]

It was further provided in the rental agreement that the insurance coverage did not apply "while said vehicle is used, driven or operated in violation of the provisions of paragraph 2a, b, c, d, e, f, or h, hereof. (Subparagraph g referred to tampering with or disconnecting the speedometer.) These provisions of the rental agreement appeared on the reverse side of the agreement in small type. On the front Sullivan signed in a box containing the legend "I agree to be bound by the terms and conditions on both sides of this rental agreement." Nothing on the front of the agreement referred to the restriction on driving while intoxicated and its effect on insurance coverage. The evidence established, and the trial court found, that Sullivan was unaware of the restrictions and that no employee of Budget had called them to his attention at the time of rental.

Allstate contended at trial and contends here that Sullivan's utilization of the vehicle contrary to paragraph 2(f) of the rental agreement constituted a use and operation beyond the permission granted by the named insured and therefore outside the coverage provided by the omnibus clause. The trial court found that Sullivan breached the rental agreement but that Budget's attempt to exclude coverage for such violation was contrary to the public policy of Missouri and constituted an improper endorsement or amendment to Allstate's Basic Auto Liability Policy.

While it may be readily conceded that automobile liability insurance policies are contracts, it must also be recognized that they carry public considerations reaching beyond simply the rights of the parties to the contract. It is the public policy of this state to assure financial remuneration for damages sustained through the negligent operation of motor vehicles on the public highways of this state not only by the owners of such automobiles but also by all persons using such vehicles with the owner's permission, express or implied. *Winterton v. VanZandt*, 351 S.W.2d 696 (Mo.1961) [1, 2]. The manifestation of this public policy is found in the Motor Vehicle

---

1. The fact of intoxication was disputed but the trial court found Sullivan intoxicated. There is evidence to support that finding.

2. The other restrictions covered such matters as using the vehicle for hire, non-adult drivers, renter who had utilized a false name, racing or illegal purpose, pushing or towing another vehicle, tampering with a speedometer, and non-designated non-family additional drivers.

Safety Responsibility Law, Sec. 303.010 et seq., RSMo 1978 and in particular Sec. 303.-190.2(2). That provision mandates that any policy issued to comply with the Safety Responsibility Law include an omnibus clause to provide liability insurance not only for the named insured but also for "any other person . . . *using* any such motor vehicle . . . with the express or implied consent of such named insured." *Weathers v. Royal Indemnity Co.*, 577 S.W.2d 623 (Mo. banc 1979) l.c. 625. Allstate's policy here was by its express language issued to comply with the Safety Responsibility Law. In view of the language of *Weathers* and in recognition that both insurer and insured intend for the policy to meet the requirements of the Safety Responsibility Law, we find no merit to Allstate's contention that the policy is to receive a restrictive interpretation until it is actually certified pursuant to the statute. The public policy and statutory requirements of this state apply to this policy and were so intended by the parties.[3] As stated in *Weathers* the statute mandates that the omnibus clause protect any person *using* the vehicle with the permission of the named insured whether or not the actual operation of the vehicle is within the framework of that permission. Any policy providing less protection is contrary to the public policy of this state. We, therefore, find no merit to Allstate's argument that this policy requires permission both as to use and operation. The policy itself provides that the policy is to conform to the requirements of the Safety Responsibility Law of this state and the public policy of this state mandates the same.

The question then becomes solely whether the *use* (as distinct from the operation) by Sullivan of the vehicle was within the scope of permission given by Budget. It clearly was. There is no claim that Sullivan was utilizing the vehicle for a purpose prohibited by the rental agreement. The only

attack is upon the operation of the vehicle. As in *Weathers,* Sullivan's rental of the car was for a broad, almost unfettered use. We find it unnecessary to discuss the difference between "use" and "operation" as it relates to permission of the named insured. That matter has been thoroughly analyzed in *Weathers v. Royal Indemnity Co., supra,* and *Farm Bureau Mutual Insurance Co. v. Broadie,* 558 S.W.2d 751 (Mo.App.1977). It is sufficient here to say that under those cases Sullivan was *using* the car with the permission of Budget, whether or not he was operating within the constraints of Budget's permission.

In determining the extent of coverage here we must be aware of the serious consequences of allowing restrictions in the rental agreement to determine the coverage to be provided. The liability protection for which the lessee has paid could be reduced to a nullity by rental provisions prohibiting operation of the car "negligently" or contrary to any statute or ordinance. In *Weathers* the Supreme Court refused to address the contention that the lessee should be regarded as standing in the shoes of the named insured where that named insured is in the business of leasing cars. The court did state such an argument might have merit. *See Weathers, supra.* ftnt. 9. It cannot be disputed that car rental has become commonplace and a lucrative business. The insurer is well aware that the insurance provided is, unlike personal liability policies, designed primarily to protect lessees of the named insured, not the named insured itself. The insurer is also aware that the cost of such insurance is being assumed, at least indirectly, by the lessee. It is not unreasonable, therefore, that such policies should be viewed as providing coverage closely equivalent to that provided the "named insured" in personal liability policies, rather than the more restrictive coverage provided by personal poli-

---

**3.** For similar reasons we also reject Allstate's contention that if the policy provides coverage the amount of coverage should be limited to the amount prescribed by the Safety Responsibility Law. Allstate contracted for a prescribed amount of insurance. Our holding is that Allstate may not limit the person's operation covered by that policy more than allowed by Mis-

souri public policy. Deciding that the extent of coverage must be determined by the public policy of Missouri does not change the contracted-for amount of that coverage. In support of its contention Allstate points to a provision of the *rental* agreement purporting to impose such a limit. We are dealing here with Allstate's policy, not Budget's rental contract.

cies to the named insured's permittee, who normally has made no contribution to the premium on the policy. The lessee's protections should be less subject to defeasance by the named insured in a rental situation than by the named insured in a personal policy. The outcome sought by Allstate here would achieve the opposite result.

Allstate also complains of the court's action in awarding defendant Sullivan attorney's fees. No attack is made upon the amount of those fees. Such an award is authorized in a declaratory judgment action. *Labor's Educational and Political Club-Independent v. Danforth,* 561 S.W.2d 339 (Mo. banc 1977) [22–24]. We do not consider Allstate's action in bringing this suit to be in any way frivolous or unjustified. But we cannot conclude that the trial court abused its discretion in determining that justice and equity warranted the allowance of attorney's fees to Sullivan to defend the action. *Johnson v. Mercantile Trust Company National Association,* 510 S.W.2d 33 (Mo.1974) [6, 7].

Judgment affirmed.

PUDLOWSKI and SATZ, JJ., concur.