Kenneth **SUTHERLAND,** Sr., et al., Plaintiffs, Appellants,

v.

**NN INVESTORS LIFE INSURANCE COMPANY, INC.,** Defendant, Appellee.

No. 89–1965.

United States Court of Appeals, First Circuit.

Heard Feb. 8, 1990.

Decided March 1, 1990.

---

**594**

Robert H. Flynn with whom Fay, Flynn & Fay, Boston, Mass., was on brief, for plaintiffs, appellants.

Edward S. Rooney, Jr. with whom Lyne, Woodworth & Evarts, Boston, Mass., was on brief, for defendant, appellee.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This is an action by plaintiff certificate-holder in defendant's group policy providing "Catastrophic Hospital Expense Coverage" for certain hospital charges. The issues revolve around a provision in the paragraph headed,

### EXCLUSIONS AND LIMITATIONS.

Claims will not be paid for any loss resulting directly or indirectly from: ...● any loss sustained or contracted while an Insured Person is intoxicated, under the influence of intoxicants or under the influence of any narcotic unless administered on the advice of a physician.

Plaintiff's minor daughter (also a plaintiff, but, for simplicity herein, not included in that term), was an Insured Person, hospitalized within the policy's general terms as a result of an automobile accident. It was conceded that she was driving, and was intoxicated. Both parties moved for summary judgment. The court granted defendant's motion, and plaintiff appeals. We affirm.

Plaintiff attacks the policy [1] on its face, and then by various matters off the instrument. We begin with the policy. Here plaintiff claims, first, that the policy was ambiguous, a broad concept, to include "unfair, misleading, and deceptive," and as being contrary to plaintiff's "reasonable expectations." Second, plaintiff contends that the exclusion was contrary to public policy.

While plaintiff's argument commences with his claimed reasonable expectations, we prefer to start with the exclusion provision itself. Basically, plaintiff cannot say

---

1. All relevant policy terms are fully reproduced in the Certificate in evidence that plaintiff was given at the outset. We look to that, but may speak in terms of the policy.

that the actual language was ambiguous.[2] The claimed ambiguity lies in the fact that the policy's index, although it names a page for "exclusions," does not list "intoxication," and therefore, plaintiff says, conceals the fact that the exclusion provisions exclude it. This is a totally wrenched interpretation. The index does not purport to sub-index the numerous items in the page containing the exclusion provisions. This was not concealment.

Alternatively, in a refinement of the index argument, plaintiff notes that the word "alcoholism" is indexed as being on the page in the certificate containing the exclusion provisions, but, in fact, it does not. Hence, plaintiff says, the exclusion language, "while an Insured Person is intoxicated, [or] under the influence of intoxicants," is to be read as restricted to intoxicated persons who are already alcoholics. There is a limit to how far one can go to create ambiguities.

Next, plaintiff says the exclusions were a "run-on, wordy sentence, without subsections and without numbered exclusions." This is partly true, but of itself it plainly revealed and, therefore, gave notice, that there were many exceptions. Moreover, it is not true that the clause is "without subsections." Each of 16 subsections is initiated with a black spot, or "bullet," as shown in the quotation, ante. It is little short of ridiculous to suggest ambiguity, or deception, in lack of numbering.

Passing ambiguity, plaintiff contends that in these days it is to be expected that children might drive automobiles while intoxicated, so that this was coverage plaintiff would want, and therefore would fairly expect. We may accept the principle that even seemingly unambiguous language may be disregarded if it would lead to the policy's being of no substantial economic value, *cf.* Mass.G.L. c. 175, § 110E(e)(3); *Cody v. Connecticut General Life Ins.*

*Co.*, 387 Mass. 142, 439 N.E.2d 234 (1982), but it is a far cry to condemn a single exclusion provision on any such basis. Rather, it must be recognized that insurance companies, if they are to be solvent, must determine rates by the exposure undertaken. Plaintiff's argument is, in a sense, self-defeating. The very fact that some particular risk may be great is a reason why the insured should not be given a free ride contrary to the insurer's expressed declination. It is no possible excuse that a policy specifies undesired exclusions.

Plaintiff's contention that the exclusion is contrary to public policy is in two parts. The first is statutory, that it is an exclusion condemned by Mass.G.L. c. 175, § 108. This is a broad statute containing many requirements for policies delivered to insureds within the Commonwealth, whether by domestic companies, or by others.[3] The pertinent part of this section at one time read as follows,

§ 3(b) Except as provided in paragraph (c) of this subdivision, no such policy delivered or issued for delivery to any person in this commonwealth shall contain provisions respecting the matters set forth below unless they are in the words in which the same appear in this paragraph; provided, however, that the insurer may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the commissioner which is not less favorable in any respect to the insured or the beneficiary.

.    .    .    .    .

(11) Intoxicants and Narcotics.—The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician.

---

**2.** Plaintiff does make a half-hearted attempt to call it overbroad, saying it would have applied to the daughter even had she been but a passenger. We need not detain ourselves over this.

**3.** Defendant contends that, as a group policy it is exempt from § 108 by virtue of § 110. This

latter section excludes from § 108 group policies of various descriptions. Except to generalize, defendant does not endeavor to show which description, if any, applies to itself. We need not pursue this subject.

In 1971, in connection with a broad revision of the laws relating to alcoholism, subsection (11) was struck. Plaintiff would read this as meaning that § 108 now condemns all policies that contain clauses like, or similar to, subsection (11). We read this precisely the opposite way. An insurer is now free to provide exclusions for intoxication in forms that fail to follow subsection (11). Even a superficial reading should show that subdivision 3(b) does not purport to limit the general substance of what an insurer may or not choose to insure against, but merely prescribes form in certain instances.

Apart from the fallacious statutory argument, plaintiff cites no cases, anywhere, suggesting that it is against public policy to exclude coverage for injuries due to intoxication; nor have we found any. If we were to approach the question as an original proposition we might think that the answer to plaintiff's contention that public policy forbad excluding coverage for hospital charges due to his children's driving under the influence, would be that the public would be better served to have parents aware of, rather than relieved of, the economic consequences of their children driving intoxicated. Under the banner of public policy plaintiff is saying defendant cannot choose not to indemnify the insured for an illegal act.

■ Plaintiff's other approach is based on the claim that he was induced by defendant's agent to accept this insurance as a replacement of defendant's prior policy because it was "new and improved;" "better coverage for less cost," as a result of which he lost intoxication coverage. Even if that result may be true,[4] there is no showing that the representation as a whole was false. "New and improved" is classic vacuity. So is "better." There was no evidence that the new policy was not, overall, better coverage for less cost. Any self-employed businessman (the basic quali-

fication for the group policy) knows there may be a downside to lesser costs. The agent's statement could not be taken to mean that every individual benefit of the old policy was retained (or made better) in the new, nor serve as an excuse for not reading the new one. This case is not like *Bauman v. Royal Indemnity Co.*, 36 N.J. 12, 174 A.2d 585 (1961), where the insurer purported to be simply renewing an old coverage. Defendant's agent here told plaintiff that this was a replacement, and different, and the slightest examination of the two certificates would have made this apparent. Plaintiff was offered ten days examination, and instructed to ask questions. To accept his present assertions of assuming the coverage was the same could leave an insurer exposed to whatever risks an insured could later persuade a jury he had been thinking were covered—so long as he had been careful not to read the policy.

*Affirmed.*

---

**4.** The earlier policy contained the following separate paragraph.
  INTOXICANTS AND NARCOTICS. The Company shall not be liable for any loss sustained or contracted in consequence of the Insured Person being intoxicated or under the influ-

ence of any narcotic unless administered under the advice of a physician.
This paragraph was one of many listed under the heading GENERAL PROVISIONS, rather than under the heading EXCLUSIONS AND LIMITATIONS. *Cf.* c. 175, § 108, 2(a)(5).