Kevin D. RYAN et al.

v.

Christopher KNOLLER et al.

v.

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA

v.

WORLDWIDE UNDERWRITERS
INSURANCE COMPANY.

No. 95–727–Appeal.

Supreme Court of Rhode Island.

June 25, 1997.

Stephen A. Izzi, Providence, for Plaintiff.

Thomas R. Bender, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This matter comes before us on the appeal of the fourth-party defendant, Worldwide Underwriters Insurance Company (Worldwide), from a final judgment entered in favor of the third-party defendant, fourth-party plaintiff, Indemnity Insurance Company of North America (Indemnity), on the cross-motions for summary judgment filed by both Worldwide and Indemnity in the Superior Court.

### I

### Facts and Travel

On August 20, 1993, in Newport, Rhode Island, Suzanne Arechavala (Arechavala) entered into a rental agreement with International Car Rental, Inc. (International). The agreement provided for the rental of a Chrysler LeBaron. Arechavala was listed as the "renter" in the agreement. Christopher Knoller (Knoller) was listed as an "additional driver" in that same rental agreement. By the terms of the rental agreement, the addi-

tional driver was permitted to drive the rented vehicle if he or she was "named on the face of this Agreement." Both Arechavala's and Knoller's names and license numbers were listed on the face of the rental agreement.

International's rental agreement provided further, as a use restriction, that the rental "vehicle will not be used by anyone: * * * While intoxicated or under the influence of any drugs or drowsiness * * *." The agreement also provided that

> "IF THERE IS NO VIOLATION OF ANY OF THE USE RESTRICTIONS IN PARAGRAPH 5 ABOVE [including the intoxication exclusion], Renter and any Authorized Driver shall, while operating the Vehicle, be provided with liability coverage in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy * * * for protection against liability for causing bodily injury (including death) and property damage * * *. **Such coverages shall be considered excess coverages over any other valid and collectible insurance.**"

International was insured under an insurance liability policy issued by Indemnity. Although International was the named insured under that policy, the policy also insured "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." The person using, with International's permission, a car owned by International was designated a rentee under the terms of the Indemnity policy. Specifically, a rentee was defined as "a holder of a 'rental agreement' which provides for the holder's use of an automobile for a period of less than twelve months." The Indemnity policy specifically *did not* provide protection to a rentee "when a 'rental auto['] is used or operated in violation of the terms and conditions of the 'rental agreement.'" Thus, the Indemnity policy incorporated by reference the intoxication exclusion provision contained in the rental agreement among International and Arechavala and Knoller. The Indemnity policy provided coverage in the amount of $25,000 per person and $50,000 per accident for insureds other than the named insured, International. The Indemnity policy attempted to limit its

coverage by stating that "the limit of liability provided the 'rentee' is excess insurance over any other liability insurance available."

On August 23, 1993, while under the influence of alcohol, Knoller drove, with Arechavala's consent, the motor vehicle rented from International. While driving the rental vehicle, Knoller was involved in a motor vehicle accident with Kevin Ryan (Ryan) and Lisa Young (Young), which resulted in bodily injury to Ryan and to Young. As a result of the accident with Knoller, Ryan and Young filed a personal injury action against Knoller, Arechavala, and International.

In addition to the Indemnity policy, the rental vehicle was also insured under a policy issued to Knoller by Worldwide. Among other protections, that policy provided coverage to Knoller, as the named insured, whenever he drove a vehicle that he did not own. The monetary limits of the Worldwide policy were $100,000 per person and $300,000 for each occurrence, but Worldwide also attempted to limit its coverage further by providing that "the insurance with respect to a * * * non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Worldwide entered its appearance on behalf of Knoller in the personal injury action commenced by Ryan and Young. Worldwide also filed a third-party complaint against Indemnity, alleging that Indemnity, in breach of its policy terms, failed to provide Knoller with a defense in the personal injury action. Indemnity responded by filing a cross-claim against Knoller for contribution and indemnification.

On April 21, 1995, Indemnity and Worldwide settled with Ryan and Young for a total of $92,500. The personal injury complaint was dismissed with prejudice on May 16, 1995. Indemnity contributed $50,000 toward the settlement amount, and Worldwide contributed the balance, but Indemnity's contribution was subject to an agreement that there would be a further determination of the respective rights and obligations of Worldwide and Indemnity.

Indemnity, with the consent of Worldwide, filed a fourth-party complaint for declaratory

judgment against Worldwide. Knoller's third-party claim against Indemnity and Indemnity's cross-claim against Knoller were both dismissed. Indemnity and Worldwide filed cross-motions for summary judgment based on an agreed statement of facts. A hearing on those motions was held on November 6, 1995. The trial justice entered final judgment in favor of Indemnity on November 27, 1995.

The trial justice concluded that an "additional driver" was included within the definition of rentee as set forth in Indemnity's policy and that the intoxication exclusion was valid and not against public policy. The trial justice also determined that Worldwide was the primary carrier. Worldwide filed its notice of appeal on November 30, 1995.

## II

## Intoxication Exclusion

■ Worldwide asserts that the intoxication exclusion provision in the rental agreement between International and Knoller is void as against public policy because it purports to restrict or limit statutorily mandated insurance coverage and that, as a result, Knoller is entitled to coverage under the Indemnity policy. We agree. In circumstances in which the purpose of statutorily required insurance coverage is intended for the protection of the public, that purpose may not be thwarted by permitting an insurer to avail itself of technical defenses included in its policy relating to conditions whose performance is wholly beyond the ability of the injured person to control. *See, e.g., Royal Indemnity Co. v. Olmstead*, 193 F.2d 451 (9th Cir.1951); John P. Ludington, Annotation, *State Regulation of Motor Vehicle Rent-*

*al ("You–Drive") Business*, 60 A.L.R.4th 784 (1988).

The Rhode Island General Assembly has expressed a strong public policy in favor of insurance coverage for motor vehicle rental companies. Pursuant to G.L.1956 chapter 34 of title 31, owners of rental vehicles in Rhode Island must file proof of financial responsibility with the Registry of Motor Vehicles before the registry can register the rental vehicles and before the rental vehicle company can lawfully rent any of its motor vehicles. Section 31–34–1. A certificate of self-insurance issued pursuant to G.L.1956 § 31–33–9 is not sufficient to satisfy the requirements of § 31–34–1. *See Miles–Un–Ltd., Inc. v. Fanning*, 624 A.2d 843 (R.I.1993).

■ That statutory scheme requiring proof of financial responsibility by rental vehicle companies demonstrates that the "General Assembly chose to require owners of rental vehicles to comply with a more rigorous standard for proving financial responsibility than normal operators of motor vehicles," thereby expressing a policy in this state in favor of insurance coverage by rental vehicle companies.[1] *Miles–Un–Ltd*, 624 A.2d at 848. Permitting the enforcement of an intoxication exclusion provision would be contrary to that strong policy in favor of coverage. Accordingly, we conclude that such an exclusion provision contained in a rental vehicle company's rental agreement and incorporated by reference into the insurance policy covering those rental vehicles is against the public policy of this state and will be considered void.[2]

The overwhelming majority of jurisdictions that have considered the validity of intoxication exclusion provisions have also conclud-

---

1. The General Assembly's policy in favor of insurance coverage is also expressed through the enactment of the Motor Vehicle Reparations Act, G.L.1956 chapter 47 of title 31, which provided for mandatory auto insurance for all drivers. However, that act was not in effect when the accident involved in the matter before us occurred.

2. This is not the first time we have concluded that a provision in an insurance policy is void as against public policy. *See Sentry Insurance Co. v. Castillo*, 574 A.2d 138 (R.I.1990) (provision disallowing coverage for accidents involving snowmo-

biles void as against public policy of uninsured motorist statute); *Pepin v. American Universal Insurance Co.*, 540 A.2d 21 (R.I.1988) (provision allowing either party to demand trial de novo when arbitration award exceeded minimum limits for bodily injury liability was void as against public policy); *Pin Pin H. Su v. Kemper Insurance Companies/American Motorists Insurance Co.*, 431 A.2d 416 (R.I.1981) (requirement of physical contact between insured vehicle and unidentified motorist's vehicle was void as against public policy).

ed that such provisions are void as against public policy. The most often-cited case involving an intoxication exclusion provision is *Allstate Insurance Co. v. Sullivan*, 643 S.W.2d 21 (Mo.Ct.App.1982). In *Allstate* the defendant, Sullivan rented an automobile from Budget Rent A Car (Budget) at St. Louis Municipal Airport. The rental agreement contained a provision, like the provision in International's rental agreement, that the rental vehicle should not be operated "[w]hile under the influence of intoxicants or narcotics." *Id.* at 22. The insurance policy between Budget and its insurer, Allstate, provided that there would be coverage for any person operating a rental vehicle with Budget's permission as long as that operation was "within the scope of such permission." *Id.* Sullivan was then involved in an accident while he was intoxicated. The court there concluded that because Missouri had enacted a Motor Vehicle Safety Responsibility Law, it was the public policy of that state to "assure financial remuneration for damages sustained through the negligent operation of motor vehicles on the public highways of this state not only by the owners of such automobiles but also by all persons using such vehicles with the owner's permission, express or implied." *Id.* The court went on to distinguish between "use" of an automobile and "operation" of an automobile and determined that Sullivan's *use* of the rental car "was for a broad, almost unfettered use." *Id.* at 23. The court adopted the distinction between "use" and "operation" employed in *Weathers v. Royal Indemnity Co.*, 577 S.W.2d 623 (Mo.1979), and *Farm Bureau Mutual Insurance Co. v. Broadie*, 558 S.W.2d 751 (Mo.Ct.App.1977):

"*Use* is said to involve its [the motor vehicle's] employment for some purpose or object of the user. *Operation* of the vehicle, on the other hand, is said to involve the driver's direction and control of its mechanism for the purpose of propelling it as a vehicle." *Weathers*, 577 S.W.2d at 627. *See also Broadie*, 558 S.W.2d at 754.

In applying that distinction to the facts before it, the Missouri court in *Allstate* held that the intoxication exclusion provision restricted only the operation of the rental vehicle and that, therefore, even though Sullivan's *operation* of the rental vehicle may not

have been within the scope of Budget's permission, Sullivan's *use* of the rental vehicle had been. Thus, because the Motor Vehicle Safety Responsibility Law required that liability insurance be provided for the named insured and also for " 'any other person * * * *using* any such motor vehicle * * * with the express or implied consent of such named insured,' " the public policy of the state mandated that Sullivan's permissive use be insured by Allstate's policy with Budget even though Sullivan's operation of the rental vehicle was contrary to the terms and conditions of the rental agreement. 643 S.W.2d at 23.

In so concluding, the Missouri court recognized that "[i]n determining the extent of coverage here we must be aware of the serious consequences of allowing restrictions in the rental agreement to determine the coverage to be provided. The liability protection for which the lessee has paid could be reduced to a nullity by rental provisions prohibiting operation of the car 'negligently' or contrary to any statute or ordinance." *Id.*

In *City of Norfolk v. Ingram*, 235 Va. 433, 367 S.E.2d 725 (1988), the Virginia court also held that an intoxication exclusion provision, contained in an insurance policy that insured a city-owned motor vehicle, was void as against public policy. The court opined that

"Nowhere in the statute do we find any authority to restrict the *manner* of operation. If we were to hold that omnibus coverage to operate a motor vehicle could be conditioned upon a restriction against driving it while intoxicated, there is no rational reason why such coverage could not be limited by the owner's prohibition of the user's operation of the loaned vehicle in violation of law, thus incorporating any traffic violation * * *. Such a rule would essentially undercut the legislative policies of protecting a permissive user against liability to others and creating a means of recovery to any party injured when struck by a vehicle operated by a permissive user." *Id.* 367 S.E.2d at 727.

Additionally, in *Donegal Mutual Insurance Co. v. Long*, 387 Pa.Super. 574, 564 A.2d 937, 945 (1989), the court concluded that

intoxication exclusion provisions were void as against public policy because "[a] slight deviation from such a restrictive lease could render an injured victim devoid of adequate protection, which is contrary to the intent envisaged by" the Pennsylvania vehicle and traffic law in question in *Donegal. See also P & H Vehicle Rental and Leasing Corp. v. Garner*, 416 So.2d 503, 506 (Fla.Dist.Ct.App. 1982) ("the provision * * * attempting to avoid liability if the lessee is driving while intoxicated is invalid as against public policy").[3]

We acknowledge a minority position that has held that intoxication exclusion provisions are not void as against public policy. However, in reviewing those cases, we find them distinguishable on their facts. In *Public Employees Mutual Insurance Co. v. Hertz Corp.*, 59 Wash.App. 641, 800 P.2d 831 (1990) (*PEMCO*), the rental vehicle agency involved was a self-insurer. In Rhode Island, we have concluded that a certificate of self-insurance is not sufficient to satisfy the dictates of § 31–34–1. *Miles–Un–Ltd, Inc. v. Fanning*, 624 A.2d 843 (R.I.1993). Furthermore, in *PEMCO*, the State of Washington did not have a statute specifically requiring rental vehicle companies to furnish proof of financial responsibility. Thus, in this state we have a stronger policy of insurance coverage for rental car companies than in *PEMCO*, as evidenced by the specific mandates of chapter 34 of title 31. Accordingly, the analysis of *PEMCO* is not applicable to the case before us.

In *Philadelphia Indemnity Insurance Co. v. Carco Rentals, Inc.*, 923 F.Supp. 1143 (W.D.Ark.1996), the intoxication exclusion provision at issue was contained in a rental agreement and, as with the Indemnity policy, was incorporated by reference into an insurance policy. However, unlike the situation before us now, the insurance policy incorporating the intoxication exclusion provision in *Carco* only provided insurance coverage in excess of the statutory minimum requirements. The rental vehicle company involved in *Carco* was insured by another insurance policy that provided the basic insurance coverage mandated by law, and that insurance policy did not incorporate the intoxication exclusion provision. Therefore, the court felt that the intoxication exclusion provision in the excess insurance policy was enforceable because the minimum statutory requirements for insurance coverage had already been met by the basic-coverage insurance policy. Here the policy issued by Indemnity was the only source of insurance coverage for International and was the only coverage satisfying the mandates of chapter 34 of title 31. Therefore, the analysis in *Carco* is not applicable to the appeal before us.

In *Sutherland v. NN Investors Life Insurance Co.*, 897 F.2d 593 (1st Cir.1990), the Court of Appeals for the First Circuit, interpreting Massachusetts law, also held that an intoxication exclusion provision was not void as against public policy. However, some nineteen years before the decision in that case, there existed a Massachusetts statute that specifically permitted the use of intoxication exclusion provisions in insurance policies. *Id.* at 595 (citing Mass.Gen.Laws ch. 175, § 108). Although that statute was repealed in 1971, the Court of Appeals appeared to be persuaded by that previous approval of intoxication exclusion provisions. The Court of Appeals found that, after the repeal of Mass.Gen.Laws ch. 175, § 108, insurers were even less restricted in their use of intoxication exclusion provisions in policies because they no longer had to conform to

---

3. Our General Assembly has expressed, through the enactment of chapter 34 of title 31, of our General Laws, an even stronger public policy in favor of insurance coverage for rental vehicles than in any of the other jurisdictions finding that intoxication exclusion provisions are void as against public policy. None of those other jurisdictions had a statutory scheme specifically requiring proof of financial responsibility for rental vehicle companies. Furthermore, the Motor Vehicle Reparations Act found in chapter 47 of title 31, although not applicable here because it was enacted after the accident in question, also mandates broader coverage than many of the other jurisdictions in the above-cited cases since it requires coverage for all damages arising from "the ownership, maintenance, use, or operation" of a vehicle. Section 31–47–2(12)(i). Thus, our state's policy in favor of insurance coverage provides even stronger justification for the conclusions reached by the other jurisdictions finding that intoxication exclusion provisions are void as against public policy.

the requirements of the repealed statute. The court went on to state—erroneously, as discussed above—that there were "no cases, anywhere, suggesting that it is against public policy to exclude coverage for injuries due to intoxication."[4] *Sutherland,* 897 F.2d at 596. Because the Massachusetts Legislature had expressed a different public policy with respect to insurance coverage for motor vehicles, the decision in *Sutherland,* like the decisions in *PEMCO* and *Carco,* is of no assistance here.

■ Accordingly, for all the foregoing reasons, we conclude, in keeping with this state's strong public policy, as expressed by the General Assembly in chapter 34 of title 31, that intoxication exclusion provisions that attempt to restrict or limit insurance coverage for rental vehicles are void as against public policy. Therefore, Indemnity must provide coverage to Knoller for the accident involving Ryan and Young.

### III

### Priority of Policies

■ Since we have determined that Knoller is entitled to coverage under the Indemnity policy, we must now determine the respective rights and obligations of Indemnity and Worldwide under the relevant insurance policies since both policies contain "excess insurance" provisions. Worldwide asserts that Indemnity's policy should be considered the primary policy because, " 'in the light of [the] total policy insuring intent' " of the Indemnity policy, *Liberty Mutual Insurance Co. v. Harbor Insurance Co.,* 603 A.2d 300, 302 (R.I.1992), it was Indemnity " 'whose coverage was effected for the primary purpose of insuring' " the risk that Knoller or Arechavala would get into an accident in the rental car. *Illinois Farmers Insurance Co. v. Depositors Insurance Co.,* 480 N.W.2d 657, 659 (Minn.Ct.App.1992). However, Indemnity contends conversely, that Worldwide should either provide the primary insurance coverage, or, in the alternative, that pursuant to our decision in *Brown v. Travelers Insurance Co.,* 610 A.2d 127 (R.I.1992), the policies should be applied on a pro rata basis. We agree that *Brown* applies to the facts as presented in the record before us.

*Brown* involved an accident occurring while Brown was test-driving a vehicle owned by Hurd Buick (Hurd). Brown was individually insured by a policy that provided, like the Worldwide policy, that " 'any insurance we provide for a vehicle you do not own shall be excess over other collectible insurance.' " *Id.* at 128. The insurance policy covering Hurd provided that a Hurd customer was not a covered insured unless the customer had no other insurance or had insurance in an amount less than the financial responsibility law required. In light of the competing clauses that both attempted to avoid coverage, we determined that an examination of the overall policies' insuring intent was not helpful. Instead, we concluded that requiring both insurers to share the loss on a pro rata basis was a more effective manner of resolving the conflict. That solution, we opined, would avoid encouraging "the complication of insurance legerdemain at the expense of the policy holders' money or the courts' time" because it prevented insurance companies from engaging in a "battle of the drafters." *Id.* at 130. We find the analysis in *Brown* to be controlling in regard to the facts in the record before us.

### IV

### The Definition of Rentee

Because we have concluded that the intoxication exclusion provision is void as against public policy, we need not address whether Knoller is a rentee within the definition of the Indemnity policy.

### V

### Conclusion

For the foregoing reasons, we conclude that the intoxication exclusion provision contained in the rental agreement and incorporated by reference into International's insurance policy with Indemnity is void as against public policy and that Indemnity and World-

---

4. Apparently overlooked was John P. Ludington, Annotation, *Car Rental Regulation,* 60 A.L.R.4th 784, 847–48 (1988), concerning that very exclusion.

wide must share in the payment of the settlement amount on a pro rata basis. Accordingly, Worldwide's appeal is sustained, the judgment appealed from is reversed, and the papers in this case are remanded to the Newport County Superior Court with directions to enter summary judgment in accordance with this opinion.

GOLDBERG, J., did not participate.