Mardell HOLLOWAY, as heir of William Holloway, and Carolyn Gilbert and Charles Jones III, as heirs of Charles Jones II, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

J.C. PENNEY LIFE INSURANCE COMPANY, Defendant.

No. 97 C 4555.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 23, 1998.

John G. Jacobs, Kevin B. Marsh, Plotkin & Jacobs, Ltd., Chicago, IL, S. Jerome Levy, Levy, Leopold & Associates, P.C., Chicago, IL, Joshua Karsh, Karl G. Leinberger, Plotkin, Jacobs & Orlofsky, Ltd., Chicago, IL, for Plaintiffs.

John A. Bannon, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, Marci A.

Eisenstein, Heidi Dalenberg, Schiff, Hardin & Waite, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

The plaintiffs in this proposed class action case are the beneficiaries of insureds who purchased from J.C. Penney Life Insurance Company ("J.C. Penney") an accidental death policy which unambiguously excludes coverage of an insured whose blood alcohol level exceeds .10 percent at the time of his death. Pursuant to that policy, J.C. Penney refused to pay benefits to the plaintiffs following the deaths of William Holloway, who died with a blood alcohol level of 107 while swimming, and Charles Jones II, whose blood alcohol level was .17 at the time of a fatal auto accident.

The dispute here centers on whether J.C. Penney's denial of benefits was lawful in the absence of a showing that the insureds' intoxication *caused* their deaths. Most of the answer lies within three provisions of the Illinois Insurance Code.

The first, 215 ILCS 5/357.14, states that

Except as provided in section 357.26, no ... policy delivered or issued for delivery to any person in this State shall contain provisions respecting the matters set forth in sections 357.15 through 357.25 unless such provisions are in the words in which the same appear in this article; provided, however, that the company may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the Director [of the Department of Insurance] which is not less favorable in any respect to the insured or the beneficiary.

So all accidental death policies in Illinois which "contain provisions respecting the matters set forth in sections 357.15 through 357.25" must use the words which those sections use. Section 357.25 is the relevant one here, and it reads: "INTOXICANTS AND NARCOTICS: The company shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicat-

ed or under the influence of any narcotic...."

■ The plaintiffs argue that every accidental death insurance policy which contains an exclusion concerning alcohol must parrot the statutory language, and that section 357.25's language clearly requires that the insured's alcohol use *cause* the loss for the exclusion to apply. And while they acknowledge that an insurance company may vary its policy provision with the approval of the Director, they contend that the Director may only approve a provision "which is not less favorable in any respect to the insured or the beneficiary." *Id.* § 357.14. Obviously a provision which dispenses with causation as a requirement for exclusion is worse for insureds and beneficiaries than one which does not.

J.C. Penney responds by pointing out that section 357.14 begins by stating "Except as provided in section 357.26." The text of section 357.26 is as follows:

If any provision of the preceding sections is in whole or in part inapplicable to or inconsistent with the coverage provided by a particular form of policy[,] the company, with the approval of the Director, shall omit from such policy any inapplicable provision or part of a provision, and shall modify any inconsistent provision or part of the provision in such manner as to make the provision as contained in the policy consistent with the coverage provided by the policy.

J.C. Penney argues that the plain language of this section empowers the Director to authorize departures from the statutory language without regard to whether the change is better or worse for the insureds. This places the parties at an impasse.

■ We believe that the deadlock is the result of an error by the plaintiffs. They read the Code as requiring that insurance policies in Illinois either include the statutory (i.e. causal) alcohol exclusion (citing §§ 357.14 and 357.25) or no alcohol exclusion at all (citing § 357.26) since completely omitting the exclusion favors the insureds (citing § 357.14). But while the plaintiffs are correct in stating that section 357.26 allows the Director to approve the omission of a statuto-

ry provision from a policy where that provision is "inapplicable to . . . the coverage provided," it also allows him to approve the modification of a statutory provision "to make the provision as contained in the policy consistent with the coverage provided by the policy." In other words, the substance of sections 357.15 through 357.25 need not appear in every Illinois insurance policy; those sections do not set a floor on the level and quality of insurance which must be provided. *See Sutherland v. NN Investors Life Ins. Co., Inc.,* 897 F.2d 593, 596 (1st Cir.1990) (considering identical Massachusetts statutes and stating that "Even a superficial reading should show that subdivision 3(b) [identical to Illinois's section 357.14] does not purport to limit the general substance of what an insurer may or may not choose to insure against, but merely prescribes form in certain instances").[1] Instead, it seems that sections 357.15 through 357.25 amount to nothing more than pre-approved insurance provisions.[2]

■ But what about section 357.14 and its proviso that the Director may only approve more "favorable" changes? Recall the entire passage: "[T]he company may, at its option, use in lieu of any such provision *a corresponding provision of different wording* [emphasis added] approved by the Director which is not less favorable in any respect to the insured or the beneficiary." We believe that "a corresponding provision of different wording" is a provision which has the same substance expressed by different language. Thus if an insurance company wanted its alcohol exclusion to use the phrase "caused by the insured's being intoxicated" rather than the statutory "in consequence of the insured's being intoxicated," 215 ILCS 5/357.25, that would require the Director's approval. But if the substance will be the same either way, why does the statute empower the Director only to approve changes which are "not less favorable," *id.* § 357.14, than the statutory provisions? In essence, this prohibits an insurance company from employing obfuscatory boilerplate in the relevant sections of its policy. While "not less favorable" is an inelegant way of expressing this idea, sections 357.15 through 357.25 are written in plain English, and it appears to have been the Illinois General Assembly's intent that any substitute for them not be any less understandable to the average policyholder.

■ We have concluded that the Director had the authority to approve J.C. Penney's non-causal intoxication exclusion, but the parties vigorously dispute whether or not he actually approved it. We believe that the evidence compels a finding that he did. J.C. Penney submitted to us original "specimen" copies of the policies at issue in this case, complete with the stamps of approval issued by the Department of Insurance and a statutory certification from the Department. The plaintiffs object that there is no evidence that J.C. Penney ever "flagged" the alcohol exclusion for the Director, but the statute requires merely that the Director approve the exclusion, not that he approve it individually or that he place his initials next to it or that he do anything else of the sort. Besides, we

---

1. *See also Equitable Life Assurance Soc'y v. Bell,* 27 F.3d 1274, 1282–83 (7th Cir.1994) (discussing an analogous provision of Indiana law); 46 SANDRA MULAY CASEY ET AL., TEXAS JURISPRUDENCE, INSURANCE CONTRACTS AND COVERAGE § 765 (3d 1995) (discussing Texas's identical intoxication provisions and stating that "A life insurer may stipulate for exemption from liability if the insured's injury or death occurs while he is intoxicated, or in consequence of his having been under the influence of any narcotic or intoxicant"). We also note that another district court gave this same construction to Illinois law. *See Greene v. J.C. Penney Life Ins. Co.,* No. 96–996–CIV–J–21–B, slip op. at 5–6 (M.D.Fla. Sept. 29, 1997) (not available on Westlaw).

2. We thus disagree with the Ninth Circuit's characterization of Illinois's section 357.25 as a "public policy-based requirement[ ]" which mandates that "any intoxication exclusion written into a policy . . . use precise, statutorily provided language indicating that the insured's intoxication . . . cause[d] the loss in order to trigger the exclusion." *Lane v. J.C. Penney Life Ins. Co.,* No. 93–36099, 1995 WL 398831, at *1 (9th Cir. 1995). The Ninth Circuit did not confront the question presented here, and it neither cited section 357.26 nor discussed that section's importance. We would distinguish *Olson v. American Bankers Ins. Co. of Florida,* 30 Cal.App.4th 816, 35 Cal.Rptr.2d 897 (1st Dist. 1994) (California law), and *Bill v. Northwestern Nat'l Life Ins. Co.,* 143 Mich.App. 766, 373 N.W.2d 214 (1985) (Michigan law), on the same basis.

doubt that this unambiguous, plain-English provision "snuck by" the Director, as the plaintiffs claim. And as for the plaintiffs' contention that the Director must—but there is no specific evidence that he did—personally approve J.C. Penney's policy, J.C. Penney has submitted approval stamps from the Department of Insurance, and the plaintiffs "failed to produce any evidence that would counter the normal presumption of regularity that attaches to the actions of public officers." *Palmer v. United States*, 116 F.3d 1309, 1311 (9th Cir.1997) (summary judgment). While we must view the evidence in the light most favorable to plaintiffs, *see id.*, there is nothing—apart from the plaintiffs' bald speculation—from which we might infer that someone other than the Director approved J.C. Penney's policy forms in this case. It is thus unnecessary for us to decide whether the Director could lawfully have delegated his responsibilities under section 357.26.

We grant J.C. Penney's motion for summary judgment. It is so ordered.