577 S.E.2d 171 (2003)
UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff,
v.
Michael A. RHODES, Individually, and as Administrator of the Estate of Deanna Marie Renalds Rhodes, Deceased, Integon Insurance Company/GMAC, B & R Rent-A-Car, Inc., Nationwide Mutual Insurance Company and Clarence William Goff, Jr., Defendants.
No. COA02-740.
Court of Appeals of North Carolina.
March 18, 2003.
*172 Wallace, Morris & Barwick, P.A., by Thomas H. Morris, Kinston, for plaintiff appellee.
Baker, Jenkins & Jones, P.A., by Ronald G. Baker and Ernie K. Murray, Ahoskie, for defendant-appellant Nationwide Mutual Insurance Company.
Gaylord, McNally, Strickland, Snyder & Holscher, L.L.P., by Danny D. McNally, Greenville, for defendant-appellee Michael A. Rhodes, Individually and as Administrator of the Estate of Deanna Marie Renalds Rhodes, deceased.
C. Everett Thompson, II, Elizabeth City, for defendant-appellee Clarence William Goff, Jr.
BRYANT, Judge.
Nationwide Mutual Insurance Company (Nationwide) appeals a declaratory judgment dated 9 April 2002 determining the applicability of an automobile liability insurance policy issued by Nationwide. The findings of fact contained in the judgment are as follows:
2. [C]ounsel for all parties ... stated in open court that there were no factual issues in existence and that the [trial] [c]ourt need only determine the legal issue raised by the pleadings and the discovery filed therein.
3.... [P]laintiff, United Services Automobile Association (hereinafter "USAA"), filed this action on June 7, 2001, seeking a declaratory judgment action adjudicating the rights, duties, and obligations of USAA under a policy of automobile liability insurance providing underinsured motorist coverage (UIM) to Deanna Marie Rhodes, ... covering a 1998 Jeep Grand Cherokee Laredo.
4.... [D]efendant, B & R Rent-A-Car, Inc. (hereinafter "B & R"), rented a 1996 Ford automobile to defendant, Anne R. Hampton [ (Hampton) ], on or before October 15, 1999, which she was operating on that date on U.S. Highway No. 158 in Kill Devil Hills, North Carolina, and which collided with the rear of the 1998 Jeep Grand Cherokee Laredo in which Deanna Marie Rhodes was riding as a passenger, causing injuries to her which resulted in her death.
5. [Hampton] was operating the 1996 Ford automobile owned by defendant B & R while intoxicated.
6.... Integon Insurance Company/GMAC provided automobile liability insurance coverage to [Hampton] on a motor vehicle owned by her, ... in the amount of $100,000.00 per person, and payment of the full amount of said coverage has been tendered to the estate of Deanna Marie Rhodes, on the basis that the B & R vehicle was a substitute vehicle, resulting in Integon's liability insurance coverage for this accident being primary.
7. [Nationwide] provided automobile liability insurance coverage in the amount of $100,000.00 per person on B & R vehicles on the date of the accident under policy number 61 FB913829-0003E, which said coverage would provide secondary liability coverage to the defendant, [Hampton], if coverage is found to exist.
8.... USAA[ ] affords UIM coverage to the decedent's estate, the amount of which will be effected by the existence or nonexistence *173 of coverage on the B & R vehicle insured under the defendant Nationwide's policy.
9. [Hampton] entered into a rental agreement with the defendant B & R for the rental of the vehicle she was operating at the time of the accident, which agreement was in writing and provided, among other things, that "the vehicle shall not be used... while under the influence of intoxicants or drugs."
....
11.... Nationwide's policy of automobile liability insurance issued to defendant B & R contains no exclusion that excludes coverage for operators of the defendant B & R vehicles who might be under the influence of intoxicants or drugs at the time of the operation of such vehicles, and its automobile liability insurance policy contains no exclusions of coverage based upon the adoption of any of the terms of the rental agreement.
Based on these findings, the trial court reached the following conclusions:
1. [O]n October 15, 1999, [Hampton] was operating the 1996 Ford automobile which she had rented from ... B & R[ ] and was in lawful possession of said vehicle at the time of the automobile accident....
2.... [T]he automobile liability insurance policy issued by defendant Nationwide to defendant B & R provided liability insurance coverage on its rental vehicles[ ] and contained no provision that would exclude coverage in the event a le[s]see operated a rental vehicle while under the influence of intoxicants or drugs.
3.... [T]he terms of the contract set forth in the defendant B & R rental agreement executed by ... Hampton, including the prohibited uses set forth therein, do not supercede the terms of the automobile liability insurance policy issued by defendant Nationwide to ... B & R, do not constitute a legal basis for the exclusion of coverage afforded under the terms of the policy, and do not alter the terms of the insurance policy.
The trial court then determined that the Nationwide policy afforded secondary liability insurance coverage on the rental vehicle in the amount of $100,000.00 per person.
The Nationwide policy issued to B & R and reviewed by the trial court for purposes of the declaratory judgment defined an insured as "[y]ou [ (B & R) ] for any covered `auto'" and "[a]nyone else while using with your permission a covered `auto' you own, hire or borrow."
The dispositive issue is whether Hampton was using the rental vehicle with B & R's permission so as to make her an insured under the terms of the Nationwide policy. Nationwide argues because Hampton drove the rental vehicle while intoxicated, which was prohibited by the B & R rental agreement, Hampton did not qualify as a permissive user, and thus an insured, under the Nationwide policy. For the reasons stated below, we conclude that Hampton was using the vehicle with B & R's permission and was therefore insured by Nationwide.
The Nationwide policy provides that, besides B & R, an insured is "[a]nyone else while using with [B & R's] permission a covered `auto' [B & R] own[s], hire[s] or borrow[s]." In order to ascertain who is insured under the Nationwide policy, it is therefore necessary to determine whether, at the time of the accident, Hampton was using the rental vehicle with B & R's permission. According to the terms of the rental agreement, Hampton was granted use of the rental vehicle for a specified time period. Although the agreement restricted the manner in which the vehicle was to be used by prohibiting its operation while intoxicated, Hampton's failure to use the vehicle as permitted did not negate the fact that she was in use of the vehicle "with [B & R's] permission." North Carolina has no case law that speaks directly to this distinction, but other jurisdictions have considered the issue. We find particularly instructive the holding in Allstate Ins. Co. v. Sullivan, 643 S.W.2d 21 (Mo.Ct.App.1982), in which the insurer argued a driver's use of a rental vehicle had gone beyond the permission granted by the named insured in that the driver had signed a rental agreement prohibiting use of the vehicle while intoxicated and then driven it in an intoxicated state, resulting in an accident. The Sullivan court stated:
The question ... becomes solely whether the use (as distinct from the operation) by *174 [the driver] of the vehicle was within the scope of permission given by Budget [ (the named insured) ]. It clearly was. There is no claim that [the driver] was utilizing the vehicle for a purpose prohibited by the rental agreement. The only attack is upon the operation of the vehicle. [The driver's] rental of the car was for a broad, almost unfettered use.... [The driver] was using the car with the permission of Budget, whether or not he was operating within the constraints of Budget's permission.
Id. at 23; see also New York Cas. Co. v. Lewellen, 184 F.2d 891, 894 (8th Cir.1950) (where the court, in applying Missouri law, held that "the violation of ... a rule [concerning the use of firm equipment by employees while drinking] is not sufficient to terminate automatically the employer's express permission for the actual use of the vehicle at the time an accident occurs").
In City of Norfolk v. Ingram, the Virginia Supreme Court further noted that while Virginia case law, similar to North Carolina precedent, denies coverage "because of a bailee's violations of an owner's instructions as to the time of operation of the vehicle, the purpose of its operation, the route the vehicle is to be driven, and the person who is to operate the vehicle," the employee in Ingram did not act outside the scope of his employer's permission when he operated the employer's vehicle while intoxicated even though this was in express violation of the employer's orders. City of Norfolk v. Ingram, 235 Va. 433, 367 S.E.2d 725, 727 (1988); compare Fehl v. Surety Co., 260 N.C. 440, 441, 133 S.E.2d 68, 69 (1963) (per curiam) (where a potential buyer had permission to drive the vehicle seven miles to his home and was instructed to return it within two and a half hours but kept it for twenty hours and then became involved in an accident, the facts showed a major deviation from the permitted use and the driver's use was consequently without the permission of the owner); Nationwide Mut. Ins. Co. v. Land, 78 N.C.App. 342, 347, 337 S.E.2d 180, 183-84 (1985) (driver's use of a leased vehicle constituted a material deviation from the permission granted in the lease and was not a permissive use within the meaning of the policy or N.C. Gen.Stat. § 20-279.21(b)(2) where his initial use of the vehicle was permitted under the terms of a written lease, but he defaulted on the lease and nevertheless continued to use the vehicle), aff'd, 318 N.C. 551, 350 S.E.2d 500 (1986). The Ingram court's ruling relied on the reasoning in Sullivan and noted that if coverage could be limited by forbidding users to drive while intoxicated, "the same rationale would authorize an exclusion of ... coverage if the vehicle were operated negligently or in violation of statute." Ingram, 367 S.E.2d at 727. "Such a rule[, however,] would essentially undercut the legislative policies of protecting a permissive user against liability to others and creating a means of recovery to any party injured when struck by a vehicle operated by a permissive user."[1]Id.; see N.C.G.S. § 20-279.21(b)(2) (2001) (imposing mandatory liability coverage for persons using vehicle with insured's permission).
We find persuasive the reasoning of Sullivan and Ingram and hold that although Hampton violated a provision of the rental agreement as to her operation of the vehicle, she did not exceed the scope of B & R's permission to use the vehicle for purposes of qualifying as an insured under the Nationwide policy. Accordingly, the trial court properly concluded that "the terms of the contract set forth in the ... B & R rental agreement executed by ... Hampton ... do not constitute a legal basis for the exclusion of coverage afforded under the terms of the [Nationwide] policy" and that Nationwide must provide coverage under the terms of its policy.
Affirmed.
Judges HUNTER and ELMORE, concur.
NOTES
[1] In fact, another clause of the B & R rental agreement prohibited operation of the vehicle "in violation of any federal, state or local laws." If we were to adopt Nationwide's argument, such a prohibited use, as the Ingram court noted, would allow for the exclusion of coverage for even negligent operation of a vehicle, a result contrary to the purpose of the motor vehicle liability insurance laws.